The Board of Education of the Town of Sauk Centre v. Moore.

The demurrer to the defence is well taken, and the order allowing the demurrer is affirmed.

---

THE BOARD OF EDUCATION OF THE TOWN OF SAUK CENTRE

*vs.*

ALEXANDER MOORE.

The act for the support and better regulation of common schools in the town of Sauk Centre, [*Special Laws of* 1869, *ch.* 92,] does not conflict with the provisions of *Art.* 8, *secs.* 1 *and* 3, or of *Art.* 10, *sec.* 2, of the constitution.

. The General Statutes, which require a two-thirds vote of the electors of school districts to authorize the issue of bonds, do not apply to the bonds authorized by said special act.

The provision that such bonds may be issued in pursuance of a vote of the electors at any annual or duly called special meeting, means a majority vote.

Said act required the secretary of the Board of Education to keep a full and accurate record of their proceedings, and that such original record should be *prima facie* evidence of the matters therein stated. The secretary testified that at the meetings of the board he made full minutes, and transcribed them on to the record sometimes the next morning, and sometimes in a day or two. *Held*, that the record so made up, and not said minutes, was the original record, which by said act is made evidence.

Evidence that a committee, appointed by the board therefor, negotiated certain bonds, supports an allegation in the complaint, that the board negotiated them.

It was within the official duty of the secretary to keep a register of bonds issued by the board. Such register is a record of their proceedings, and evidence.

Said secretary testified that he had made strict search for a paper in his official custody, and could not find it, and did not know where it was   *Held*, that parol evidence of its contents was admissible.

The rule, that the contents of a writing in existence and attainable cannot be proved by parol, excludes such evidence by defendant of the contents of a paper, which defendant testified was drawn up and left by him with said secretary, and that the latter on being asked for it by him previous to the trial, denied any recollection that such paper was made, and stated that he had looked over his papers and could find none such.

Application to the facts in this case of the rule that oral evidence cannot be substituted for any writing, the existence of which is disputed, and which is material to the issue.

The general election law, [*Gen. Stat. ch.* 1,] does not apply to a meeting called under sec. 14 of said special act.

An agreement to sell bonds at par, to be paid for in brick and in lumber at its current cash value at the time of delivery, is authorized by said special act, and by a vote of the electors giving the board power to issue bonds and negotiate them to the best advantage, the same, or the proceeds thereof, to be used in building a school house.

Where the defendant denied that he had agreed to deliver any such lumber, and challenged the board to sue him, no demand for any specific lumber was necessary to authorize a money action.

This action was commenced in the district court for Stearns county to recover the sum of $950.

The plaintiff in its complaint alleges that it is a corporation duly organized under a special act of the legislature, approved March 5, 1869, creating the town of Sauk Centre an independent school district, &c.; that at a special meeting of the legal voters of such independent school district, held at the school house in said district, of the time, place and object of which meeting due notice was given by publishing the same in a newspaper printed in Sauk Centre, for more than ten days next before said meeting, a resolution was duly voted upon and adopted by a vote of the majority of the electors of said school district present at said meeting, authorizing and empowering said board of education to issue bonds to the

amount of six thousand dollars, said bonds and the proceeds thereof to be used at the discretion of said board in the erection of a school-house for said school district, and giving said board authority to negotiate said bonds to the best advantage; that the board duly issued such bonds to the amount of two thousand dollars, and sold and delivered the same to defendant for lumber and brick to be used in the erection of said school building for said school district; that the defendant in consideration thereof contracted to deliver to plaintiff, in payment for said bonds, brick and lumber to the full amount and value of two thousand dollars, in such proportions of each as plaintiff should demand, the brick so delivered to be estimated at the rate of ten dollars per thousand, and the lumber at the current cash price at Sauk Centre at the time of delivery thereof; that defendant delivered to plaintiff on the contract, brick to the amount of $1,050 and no more; that plaintiff duly demanded payment in lumber of the balance of $950, due on said contract, which payment defendant refused and still refuses to make.

The substance of the answer is stated in the opinion.

The action coming on for trial at a general term of the district court, a motion for judgment on the pleadings was made by defendant and denied, and a trial by jury was had, resulting in a verdict for the plaintiff. The defendant appeals from an order denying a motion made by him for a new trial.

The opinion contains a sufficient statement of the proceedings at the trial, and of the exceptions taken by defendant.

WILLIAM S. MOORE, for Appellant.

HAYS & KERR, for Respondent.

*By the Court.*—RIPLEY, CH. J.—Plaintiff is incorporated

by ch. 92, Special Laws of 1869, and bring this action for a balance of $950, alleged to be due it from defendant upon the sale to him of certain of its bonds to the amount of two thousand dollars, payable in lumber and brick at certain specified prices.

The answer denies all the allegations of the complaint, and defendant then alleges that the bonds in question were delivered to him upon an agreement between one Calvert, said board and this defendant, that Calvert should make and have ready for use and delivery to said board by the next spring 200,000 brick at ten dollars per thousand, payable in advance by the delivery of said bonds to defendant, in consideration of defendant's guaranty of Calvert's performance, and his agreement to take the same at par in payment of certain indebtedness of Calvert to him, and of any necessary advances by him to Calvert to enable him to make and deliver said brick, and to be by him held to indemnify him against said guaranty and applied in payment of said indebtedness and advances, which together had equaled the amount of said bonds, and that Calvert performed his part of the contract.

After verdict for plaintiff, defendant moved for a new trial on the ground of error in law occurring at the trial, and that the verdict is not supported by the evidence and is contrary to law, which was denied.

Upon this appeal we will first dispose of the objection, which arises under the second ground of the motion, that the said special act is void as repugnant to art. 8, secs. 1 and 3, and art. 10, sec. 2, of the constitution of Minnesota.

Said sec. 1 is in these words: " The stability of a republican form of government depending mainly upon the intelligence of the people, it shall be the duty of the legislature to establish a general and uniform system of public schools.

" Sec. 3. The legislature shall make such provisions, by taxa-

tion or otherwise, as, with the income arising from the school fund, will secure a thorough and efficient system of public schools in each township in the state."

The object is to ensure a regular method throughout the state, whereby all may be enabled to acquire an education which will fit them to discharge intelligently their duties as citizens of the republic.

The present general laws respecting public schools, it is not denied answer these requirements of the constitution.   They not only, however, provide for the creation from time to time of independent school districts, but recognize, as a part of the state system of public schools, a great many just such school districts as those created by this special act, and established by special acts prior to the passage of the general law.   We are unable to see wherein this special act infringes upon this system.

If it be objected that, under the general law, an independent district is created by the action of the qualified electors therein, but that this is established by the legislature, the answer is, that it surely can make no difference under the constitution, whether the limits within which the public education is to be carried on under the management of a "board of education," are prescribed by one power derived from the people or another, provided the education of the people is to be conducted upon the same principles.

It is not perceived in what our system of public schools would be less general, uniform, thorough and efficient, if for example, the limits of half the school districts in the state were directly prescribed by the legislature.

In this district, the public schools are managed by a body elected in the same way and with the same powers, as the boards of education provided for by the general law in all

essentials.    The only difference seems to be in some details of execution.

As to the objection that it. violates art. 10 sec. 2, viz. : that no corporations shall be formed under special acts, except for municipal purposes, it is sufficient to say that the definition of the term " corporations," as used in that article, given in sec. 1, viz. : " all associations and joint stock companies having any of the powers and privileges not possessed by individuals or partnerships, except such as embrace banking privileges," will not include the " body politic and corporate" constituted by this act.

The six directors who compose it, and for whose election, (*sec.* 2,) the act provides, are no more an association or a joint stock company than the legislature itself.

The management of the public schools is one branch of the state government, for which within the limits of this district they are incorporated ; and, as in the case of the inhabitants of a school district, who for the same purpose are by the general law declared a body corporate, they are a *quasi* corporation, invested with corporate powers *sub modo*, and for a few specified purposes only, (11 *Minn* 41 ;) and it may also be observed that those purposes are as correctly to be called " *municipal* " as in the case of such school district ; and the constitutionality of this corporate body, and that of the independent school districts provided for by the General Statutes, may be as well defended on that ground, as that of such school district.    In each case, the object is the control and management of the public schools within a certain territory.

The first objection urged under the head of error in law occurring at the trial is that the district court erred in overruling the motion made for judgment on the pleadings.    It is said that it appears on the face of the complaint. that the bonds are

nullities, not having been issued in pursuance of a two-thirds vote.

Ch. 26 sec. 1 of laws of 1866, as amended by ch. 3 sec. 1 of laws of 1867, does not apply here.

The bonds authorized thereby must be payable at times and in a manner, to which this special law does not restrict this district.  [Sec. 14.]

Moreover, those authorized by the general law may be issued for the purchase of site, and erection, completion and *furnishing* of school houses; whereas, those authorized by this charter, can be issued to provide for purchase of site, rent or purchase, or erection of school-houses.  (*Sec.* 14.)

There can be no pretence for saying that provisions regulating the issue of a bond of one character, and for one purpose, can apply to a bond of a different character, and for a different purpose.

The provision in the special law, that the board may issue such bonds " in pursuance of a vote of the electors," is not, as the defendant supposes, silent as to the character of the vote.  The ordinary and established meaning of this is, the expressed will of a majority of such electors, voting upon the question.  (*Webster Dict. vote, sub.* 4.)  That a majority vote is spoken of in another part of the section, does not prove that *this* part is not intended to mean what it usually means.

The complaint further states that by said majority vote the said bonds and their proceeds were to be used in the discretion of the board in the erection of a school-house for said district, and giving it authority to negotiate them to the best advantage.  Whereupon it is objected, that the electors could not confer any such discretion on the board.  The act, however, authorizes it.  The board may issue bonds for any of the purposes specified in said section, when authorized by the electors to do so.  One purpose is the erection of school-houses.

The Board of Education of the Town of Sauk Centre v. Moore.

This allegation in our judgment means that the board was authorized to issue bonds to the amount of six thousand dollars, sell them for as much as possible, and use the proceeds, or so much thereof as the board think fit, in erecting a school-house.

This is all within the act. To issue bonds for the purpose of building a school-house implies their sale, and the use of the proceeds therefor, by the board, which is by law to expend all moneys coming into the treasury, (secs. 4, 14,) and has the entire control and management of the schools and school property in the district. Sec. 6.

The defendant would construe the resolution alleged as if it left it discretionary with the board to build a school-house or not.

The resolution, which is correctly set out in the complaint, is certainly a little obscure, but that the construction, that we have put upon it, is intended by the complaint, sufficiently appears from the allegation, which follows, that afterwards the board sold these bonds to defendant for lumber and brick, to be used in the erection of said school building, and that this is what the electors *meant*, is very apparent from the evidence.

Among the purposes, for which the meeting was called, was that of voting on the question of erecting a school-house and the purchase of a site therefor. The meeting first voted, that certain lots be purchased for such site by the board; and then, in the language above mentioned, provided for the issue of the bonds; the vote also providing, that these shall be in such denominations as will ensure their sale to the best advantage; and the case shows that the board proceeded to procure plans and make contracts for the material for a building, and that the only question raised was as to size and style. We think the complaint sufficiently alleges that the question of the erection of a school-house was passed upon by the electors. not left to

the board; and we think that in point of fact it was so passed upon.

It is further objected, that it does not appear that the meeting, at which these bonds were voted, was called in the mode provided by the special act, or by any authority whatever; or that any notice was given, that the question of issuing the bonds would be submitted to a vote of the electors. The complaint states that "at a special meeting of the legal voters" of said district, "of the time, place and object of which meeting due notice was given by publishing the same in a newspaper printed in said town of Sauk Centre for more than ten days before said meeting, a resolution was duly voted on and adopted," &c.

The bonds may be authorized at any annual or duly called special meeting. Special meetings are to be called by giving ten days' notice of the time, place and object thereof by publishing the same in some newspaper printed in Sauk Centre. It will be intended that the electors acted upon the matters which they were authorized to act upon, and, therefore, that the call stated that one object of the meeting was to decide on this issue of bonds. The complaint shows, therefore, that the meeting was called in the manner provided by law—*i. e.* it was a *duly called* meeting.

But the defendant objects that, in as much as the act provides that meetings may be held whenever the board deem it necessary to purchase or rent a house, &c., or whenever requested in writing by ten legal voters, that the complaint should show that this meeting was called on such resolution or requisition; otherwise, the call being unauthorized, the meeting is not a duly called meeting.

As to that, the meetings contemplated by the act are the annual meetings and those above provided for. The latter are *special* meetings in the sense of that clause, which provides

that such bonds may be voted at any annual or duly called. special meeting.  That is, a meeting called on such requisition is a special meeting; and a duly called special meeting is such a meeting called in the manner provided by the act.  When therefore the complaint states that this resolution was passed at a special meeting, it must be understood that it was called on such requisition or resolution of the board.

It is further to be observed, however, that in the course of the trial evidence of the facts necessary to make this a legal meeting was given without objection on this ground, *i. e.* that the complaint was defective in its allegations in this respect. Therefore, even if the alleged defect existed, an amendment would be allowed to conform the pleading to the facts proved.

At the trial the secretary of the board testified that the records were in his possession, and that a book produced by him contained the record of the proceedings of the board, and of all that had been done under said special acts.  The witness further testified ; " at the meetings of the board I made full minutes and transcribed them into the records, sometimes the next morning and sometimes in a day or two."  The defendant thereupon objected to the reading in evidence of said record, on the ground that said minutes should be produced.

The act makes it the duty of the secretary to keep a full and accurate record of the proceedings of the board, which shall be authenticated by his signature; and that said original records, and any transcript therefrom certified by him, shall be *prima facie* evidence of the matters therein stated.  It is no more necessary, of course, than it is usual that the secretary should make up the record while the proceedings are taking place.  Evidence that it was his custom to make it up the next day, would make it none the less the original record, or the fact that he took minutes of what was going on while the board was in session, and used them afterwards in making up his

record, whether such minutes were full or not. That which is kept by the secretary as and for the record, is the record, which, (the original,) or a transcript is made evidence, not memoranda taken and kept for another purpose, viz.: to aid him in making it up. 2 *Cush.* 27; 23 *Pick*, 184; *Whiting vs. Sprague,* 23 *Pick.* 198.

It appeared by the record that, at the meeting aforesaid, it was also resolved that the president and secretary be authorized to negotiate said bonds. The witness was asked: "State as a member of the committee, what that committee did in pursuance of the resolution as to the negotiation of the bonds?" Which was objected to by defendant as secondary and incompetent. The objection was overruled and defendant excepted.

The complaint alleged that the board negotiated the bonds; but if the board did it by an agent, evidence thereof proves the allegation. It is said that parol evidence is not the best evidence of the proceedings of the committee under the resolution. What else would be better is not stated, and we are not able to discover.

The witness then gave evidence tending to show an agreement by the committee with defendant, by which the board was to sell and deliver to defendant the bonds in question, to the amount of $2,000, in payment whereof he agreed to furnish the board with lumber and brick for said school-house in certain quantities and at certain prices, the bonds to be estimated at par; also that brick were delivered on this contract on the school-house site, which were got on an order given by defendant on said Calvert, which had been in witness' possession and deposited among the files of papers in his care as secretary; that he had made strict search for it and could not find it, and did not know where it was. He was thereupon allowed to state its contents against defendant's objection, as "incom-

petent and irrelevant, no foundation having been laid for secondary evidence."

In this however, the defendant is mistaken; the testimony tends to show that it was lawfully in the witness' possession, and had been lost or mislaid. The witness stated it to have been an order of defendant on Calvert to deliver the school district such brick as they might require. This was material, the issue being, whether defendant was the contractor, or the guarantor of the contractor.

The objections to the records, that they are not a record of the proceedings of the board, but of the conclusions of the secretary as to the effect of the proceedings, seems to us to be hypercritical. The only specification of this charge is, that " it does not appear in any instance that the motion for the . adoption of a resolution was put to a vote, or was voted upon; or who, or how many, or whether any one, voted for them." We think, on the contrary, that when the record states that, on motion of a director seconded by another, it was resolved by the board thus and so, it does appear, according to the ordinary and established use of language, that such motion was passed upon and decided by the board in the affirmative, whether unanimously or by a majority is of no consequence.

The witness was asked if he had any memoranda or record of the issuing of the bonds; and upon his answering that he had, was allowed to read the same, against the objection of the defendant as improper, secondary and incompetent.

The complaint states the issue of the bonds by the board, and it was certainly as much the secretary's duty to keep a record of that as of any other proceeding. We understand that he kept, as was his duty, a register of all bonds issued, and read these memoranda therefrom. Such record would be evidence.

But if we are mistaken about this, we do not see how the

evidence could prejudice defendant, for there is no dispute whatever that these bonds were actually issued to the defendant; the only question was, upon what contract?

Defendant, being called as a witness in his own behalf, swore that he received the bonds from the secretary, who at the time drew up a receipt or agreement, and defendant signed it and left it with him. That he had asked the secretary for it twice that spring; the first time he said but little in reply; the second time he said he could not recollect of any writing being made, had looked over his papers and could find no such paper; and defendant then offered to show by parol proof the contents of the paper mentioned, which was objected to by plaintiff and excluded.

It may be admitted that the defendant's statement was competent evidence, tending to show the execution and delivery of the writing in question. If so, it fell within the universal rule, that the contents of a writing cannot be proved by mere oral evidence, if the writing itself be in existence and attainable. The defendant offered no evidence to show that it was not attainable. It was not shown to have been lost or destroyed by the secretary, nor was he served with a subpœna *duces tecum*, nor was notice given to plaintiff to produce it.

The fact that the writing is in possession of the adverse party, does not change its character, and its absence must be accounted for by notice to the other party to produce it, or in some other legal mode, before secondary evidence of its contents can be received.

But though this particular statement of the defendant tended to prove the existence of the document, yet the whole of the evidence then in the case, including that of the defendant himself, showed, as he contends, conclusively that, from the outset, he had claimed that this paper existed, written by the secretary and in his possession, expressing the terms of the

contract, and that he relied on it, in great part, as his protection and defence; and that the secretary as persistently denied its existence and his possession.

His own statements, as disclosed in the evidence, respecting any such agreement were, we think, so conflicting as to render its existence very doubtful without reference to the opposing testimony; but giving him the full benefit of his own construction of the tendency and effect of his own evidence, it brings it within the rule that oral evidence cannot be substituted for any writing, the existence of which is disputed, and which is material to the issue between the parties.    1 *Greenl. Ev. sec.* 88.    Parol evidence of the contents of such alleged paper was, therefore, rightly refused.

The objections made to the instructions excepted to resolve themselves into this: that there is no evidence in the case tending to prove the state of facts, upon which, if they think it proved, the jury are directed to find for plaintiff; and the same points are made under the second ground of motion, and have been, or will be hereafter, considered.

Upon this second ground, in addition to the objections already considered, it is said that the verdict is not supported by the evidence, because it appears therefrom that the bonds were issued in pursuance of a vote of the electors at a meeting not conducted according to the provisions of the general election law, and that, therefore, the bonds are void on their face.

The argument is that by sec. 73 of said chapter, no election whatever for any purpose is excepted from the operation of that chapter, with the single exception of town meetings.

The provision relied on is, that "the provisions of this chapter apply to  *  *  any vote hereafter to be taken on amendments to the constitution, laws changing county lines, removing county seats or on any subject which may by law

be submitted to a vote of the people." This however in our opinion is not intended to and does not include such matters as these.

If the words themselves could be thought to cover them, a reference to the provisions of the election law will show that the legislature could never have thus intended. How for example is a poll list to be made out by the judges of the election fifteen days before a special meeting, which may be called on *ten* days notice ?

Take the defendant's specification of wherein this meeting was illegal, viz. : that it was called for four o'clock P. M., and therefore violated sec. 7 of said general election law, that, " at all elections to be held under this chapter, the polls shall be opened at nine o'clock in the forenoon and remain open till five o'clock in the afternoon."

Of course polls cannot be opened at 9 A. M., at a meeting called for 4 P. M; but is it conceivable, that the legislature intended this section to apply to such a meeting as this ?

Literally it cannot, for it is not an *election ;* but, aside from this,—here is a meeting called to determine upon purchasing a site, building a school-house and issuing bonds. Suppose a resolution is offered and an amendment moved to it. The amendment must be first voted on. How is the question on the original resolution to be reached, if the polls must remain open till the close of the meeting on the amendment ?

It is further objected, that it does not appear that the electors adopted the resolution by a majority of those present.

The record states that, " a sufficient number of the legal voters being found present to constitute a quorum for the transaction of business, the meeting, (*i. e.* of said sufficient number,) immediately proceeded to business, and the following proceedings were duly had : * * * * the motion upon the question of the adoption of said last mentioned resolution being

put to vote, a majority voted in favor thereof;" the grammatical meaning of which, in ordinary plain English is, that upon a vote being taken by the said electors upon the resolution, more than half of them voted in favor of it.

The defendant also moved to strike out from the evidence the record of the resolution of the board aforesaid, authorizing the president and secretary to negotiate the bonds, for the further reason that it did not authorize them to make such a contract as the one which the plaintiff alleges they made with defendant; that is, as we understand the objection, that it could only authorize them to convert the bonds into cash or available funds, and to place the same in the treasury.

This position is based on the provisions of the charter, that all moneys accruing to the district for school purposes shall be paid over to the treasurer.

If, however, the bonds were sold for brick, there would be no moneys accruing therefrom.

The board is given (*sec.* 14,) authority to issue bonds, with which to build this school-house. There is nothing whatever that limits the manner in which they are to be applied; and there is, of course, in the nature of things, no conceivable reason why an exchange thereof for as much brick as two thousand dollars in money would buy, is not as legitimate a mode of application, as an exchange for two thousand dollars in cash and a purchase therewith of the brick. The board delegate the same authority to its committee.

It appeared, moreover, from the records in evidence, that, at a subsequent meeting of the board, it was resolved to sue the defendant for this unpaid balance of said price of said bonds, "negotiated and delivered to him by the board, August 14, 1869."

A more explicit adoption of the acts of the committee as its own could not have been shown.

It is objected that there was no evidence that any such contract as that stated in the complaint was made. Without going into detail, we think, as already intimated, there was competent evidence to go to the jury on that point; that is to say, that the bonds were delivered to and accepted by defendant on the understanding that the district could take what brick they wanted at ten dollars per thousand, and the balance in sawed lumber and timber.

The defendant, at all events, could have had no other understanding of it, if they were delivered to him on his request, after he had told the committee, that the district might do so, and been told by them that he could have the bonds unless the board objected.

It is further objected that there was no evidence of any sufficient demand and refusal of the lumber to authorize a money action.

The defendant had denied that he had agreed to deliver any lumber whatever, and challenged the board to sue him.

No demand of a specific quantity of lumber was therefore necessary.

Some other points are made, but they do not require remark.

Order affirmed.