# CASES

## ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF MINNESOTA.

JOSEPH C. CURRYER *vs.* DANIEL D. MERRILL and others.

## April 18, 1878.

**Uniform-Text-Book Act Constitutional.**—The "act to provide uniform and cheap text-books for the public schools of Minnesota," being Laws 1877, *c.* 75, is constitutional and valid. Its provisions, as applicable to the common schools and school districts of the state, are not repealed by Laws 1877, *c.* 74.

**Same—Bill for Raising Revenue.**—An act which merely makes an appropriation of public money is not a bill for raising a revenue, within the meaning of section 10, art. 4, of the state constitution, though it may lead to the necessity of taxation.

By an act of the legislature, entitled "An act to provide uniform and cheap text-books for the public schools of Minnesota," approved February 23, 1877, (Laws 1877, *c.* 75; Gen. St. 1878, *c.* 36, §§ 156–167,) it is provided that certain

designated state officers shall make a contract on behalf of the state with Daniel D. Merrill of St. Paul, for furnishing to the state, for the period of fifteen years, suitable text-books for use in the public schools of the state. The act provides that the text-books to be furnished shall be supplied within maximum prices fixed by the act, shall be equal in size and quality to certain designated books, and shall be approved by a commission appointed by the act. The books thus furnished are to be used in all the public schools of the state, except that it is provided that the act "shall not be obligatory upon boards of education acting under special charters"—a proviso which embraces the public schools in many of the cities of the state.

The plaintiff brought this action in the district court for Ramsey county to restrain the execution of the contract between the state and Merrill, alleging, among other things, that he is a resident of school-district 106 in Blue Earth county, and the father of children entitled to attend and attending the school of that district, which is a common school-district, and not within the jurisdiction of any board of education; that his children are supplied with the text-books already in use in the public schools in the state, and which will be superseded by the text-books to be furnished under the Merrill contract; that he will be obliged to purchase the new series of books, without the benefit of a competitive market, and at a higher price than that at which he can buy the standards named in the act; and that the loss of the books now in use, and the purchase of the new ones to be furnished by Merrill, will damage him in the amount of eight dollars and more, and will damage the parents of children attending the public schools in the amount of $300,000 and more, and will seriously impede his and their children in obtaining the benefits of a free school education, and will preclude many children from the common schools altogether.

He further alleges that he is a dealer in the books now in use, and has on hand, for sale, a stock of such books of the

value of $150 and upwards, and that the value of such text-books owned and held for sale in the state is upwards of $400,000, and the use and value of these will be destroyed if the contract sought to be prevented shall be made, and the new text-books, to be furnished thereunder, shall be introduced. He also alleges that the creation and maintenance of the "revolving fund" provided for in the act will necessarily impose additional taxation on himself and others.

To this complaint the defendant Merrill interposed a general demurrer, which was sustained by *Wilkin*, J., and the plaintiff appealed.

*Charles N. Bell*, for appellant.

*Williams & Davidson* and *Gilman, Clough & Lane*, for respondent Merrill.

CORNELL, J. With the wisdom or policy of the statute under consideration courts have rightfully no concern. The remedy for injudicious legislation rests with the legislature where, it is supposed, it may be more safely left than with the courts, mainly because of the corrective influence which the people constantly exercise through frequent elections over that department of their government. To the judiciary belongs the more restricted duty of passing upon the validity of legislative enactments, as being within or without the boundaries assigned to the law-making power by constitutional law. The sole inquiry, therefore, in this, as in every other case of this character, respects the extent of legislative authority, under the federal and state constitutions, over the subject-matter of the statute which is impugned because of its alleged invalidity. In the prosecution of this inquiry, it must always be remembered that under the American systems of government, the people are recognized as possessing in their primary organized capacity the absolute and complete power of legislation as fully and to the same extent as belongs to every uncontrolled sovereignty; that in the organization of the federal and state systems of government, they have conferred upon the former, by the constitution of the United

States, exclusive legislative power in respect to certain matters, and prohibited its exercise in respect to others, and that, save as thus conferred or forbidden, they have in this state entrusted with the legislative department which they have created, the whole power of making laws which they originally possessed, subject only to such restrictions and limitations upon its exercise as they have prescribed in the state constitution.   Plenary legislative power is, therefore, the rule, while want of it is the exception.   As a sequence it logically follows that every statute duly passed by the state legislature is presumably valid, and this presumption is conclusive unless it affirmatively appears to be in conflict with some provision of the federal or state constitution; and in order to justify a court in pronouncing it invalid, because of its violation of some clause of the state constitution, its repugnancy therewith must be so "clear, plain and palpable," as to leave no reasonable doubt or hesitation upon the judicial mind.   *Ames* v. *Lake Sup. & Miss. R. Co.*, 21 Minn. 282; *Fletcher* v. *Peck,* 6 Cranch, 87; *People* v. *Draper,* 15 N. Y. 543; Cooley Const. Lim. 87, 164, 175; *Sharpless* v. *Philadelphia,* 21 Pa. St. 147.

Conceding, therefore, to the fullest extent, the contention of plaintiff that the powers assumed by the state under the provisions of the statute in question, in prescribing what kind of text-books shall be exclusively used in the public schools, in directing how, by whom, and on what terms they shall be purchased, distributed and sold, and in giving to one individual, for a definite period of time, the exclusive contract and monopoly of furnishing the same, work a radical change in the administration of our common-school system, by withdrawing from all local supervision and control matters which have hitherto been regarded as most wisely left to the district authorities and the patrons of these institutions, and that such change is vicious in principle, unwise in policy, and utterly subversive of those principles of local self-government which have heretofore pervaded the system; still, the change is one which the courts are powerless to prevent, however great or certain the

apprehended evils, unless it can be clearly demonstrated that the legislature, in its enactment, has exercised some forbidden power, and violated some specific provision of paramount law. That the proper education of all its citizens vitally concerns the permanent prosperity and public welfare of the state is not controverted. Whatever provision, therefore, may be necessary to the attainment of this end, it is clearly within the jurisdiction of the legislature, as the representative of the sovereign law-making power of the state, to make, subject only to such restrictions as are imposed upon the exercise of the power by the fundamental law.

The whole question, also, of the necessity or expediency of any particular measure, with reference to this matter, is one of legislative and not judicial cognizance. In the absence of any constitutional prohibition, the whole matter of the establishment of public schools, the course of instruction to be pursued therein, how they shall be supported, upon what terms and conditions people shall be permitted to participate in the benefits they afford—in fine, all matters pertaining to their government and administration—come clearly within the range of proper legislative authority.

This brings us to the question, which is really the sole one in this case, whether the present measure in any way conflicts with any constitutional provision inhibiting or limiting legislative power upon this subject. The only clause in the state constitution upon which any objection to the statute before us is, or can be, rested with any show of reason, is found in section 1, article 8, which is as follows: "The stability of a republican form of government depending mainly upon the intelligence of the people, it shall be the duty of the legislature to establish a general and uniform system of public schools. It is contended that the last clause of this section compels uniformity of text-books in all public schools established under legislative authority, and that the present statute is in violation of this requirement, inasmuch as it specially exempts from the operation of its provisions all special school-

districts, created under special laws. The claim is that the same rules which the legislature directs shall be applied to the ordinary common schools and school-districts, in respect to the use and procurement of text-books, must also be extended to all independent and special school-districts. The rule of uniformity contemplated by this constitutional provision which the legislature is required to observe, has reference to the system which it may provide, and not to the district organizations that may be established under it. These may differ in respect to size, grade, corporate powers and franchises, as may seem to the legislature best, under different circumstances and conditions; but the principle of uniformity is not violated, if the system which is adopted is made to have a general and uniform application to the entire state, so that the same grade or class of public schools may be enjoyed by all localities similarly situated, and having the requisite conditions for that particular class or grade. Hence, the establishment, under our general laws, of common school-districts and independent school-districts—two distinct classes of organization in respect to size, population, grade and corporate powers, though alike in most of their functions, in their public character, and in affording upon like terms the means for obtaining a common-school education to all resident scholars of the requisite age—is not in violation of the constitutional provision now under consideration.

Irrespective, however, of these considerations, it is certain that the imposition of a duty is not a limitation of power. The direction to establish a general and uniform system of public schools neither prohibits nor restrains the legislature from providing other public schools, in addition to those included in the general system, or from creating, as it has in several instances, by way of exception to the general uniformity, special school-districts, to meet particular and exceptional cases. The right to create and establish different classes and grades of public schools and school-districts necessarily involves the right to prescribe, for each separate and

distinct regulations, specially adapted thereto, and not applicable to the others. For these reasons, the enactment in question is not invalid because its provisions are confined in their operation to the ordinary common school-districts of the state.

It is insisted by plaintiff that the enforcement of the statute will practically result in limiting the sales of other books of like character, such as have heretofore been in use in the public schools, thereby depreciating their market value to plaintiff's injury, as one of the interested owners of such books, and that it will deprive the patrons of the schools of the benefits of an open and competitive market in which to make their purchases, and thus directly impose upon them an additional burden, as a necessary condition to the enjoyment of any of the advantages of these institutions. All this may be so, and still the statute is not therefore invalid, because it invades no legal rights of plaintiff, and violates no provision either of the state or federal constitution. As already stated, the course of instruction to be pursued in these schools is entirely under legislative control, save as restricted by the provisions of the state constitution. The objection, therefore, that the present measure will involve the imposition of additional burdens upon the patrons of the schools, as it does not rest upon any prohibition of the constitution, raises a question of legislative discretion and policy only, and not one of power.

The right of property which may belong to the plaintiff in respect to any books is in no way legally disturbed by any provision of this enactment. An exclusion directed against the use of any particular class of books in the public schools, or a refusal of the state to purchase them, is in no legal sense a restriction upon the right of the owner to sell, or any interference with his right of property therein.

The cost of the prescribed text-books to those who may become purchasers for the use of their children is in no just

or legal sense a tax. Such of the objections of plaintiff as rest upon the opposite proposition are therefore untenable.

The statute is not a revenue act within the meaning of section 10, article 4, of the constitution. A bill for raising a revenue is one whose main purpose is to raise money by taxation. A mere appropriation of public money, though it may lead to the necessity of taxation, is insufficient to characterize a measure as one for revenue, such as must originate in the House, and not in the Senate. 2 Story on Const. (4th Ed.) § 880.

Chapter 74, Laws 1877, passed February 28th of that year, contains no provision expressly repealing the statute under consideration. Except the clause (*subc.* 7, § 18, *subd.* 8; Gen. St. 1878, *c.* 36, § 111,) which gives to boards of education of independent school-districts, organized under the general law, the power to prescribe text-books and a course of study for schools under their care, the effect of which is to withdraw such independent districts from the operation of the text-book act, we are unable to discover any such repugnancy between the provisions of the two statutes that both may not stand together in full force.

The contract which has been made is in substantial conformity with the requirements of the statute; but if this were not the case, it is not a matter in which the plaintiff has any legal concern or right to interfere. That belongs to the parties to the contract.

This covers all questions which we deem it of any importance to discuss. Order affirmed.