HUDSON, Justice.
*4 In this appeal, we must decide whether claims alleging that the State has failed to provide students with an adequate education are justiciable. Appellants, who are primarily parents of children enrolled in Minneapolis and Saint Paul public schools, brought a putative class-action complaint on behalf of their children against respondents State of Minnesota and other State entities and officials. Appellants claim that the State has violated the Education, Equal Protection, and Due Process Clauses of the Minnesota Constitution. The State moved to dismiss the complaint on multiple grounds. The district court partially granted and partially denied the State's motion. The State filed an interlocutory appeal, and the court of appeals reversed, concluding that the complaint's claims present a nonjusticiable political *5 question. We hold that separation-of-powers principles do not prevent the judiciary from ruling on whether the Legislature has violated its duty under the Education Clause or violated the Equal Protection or Due Process Clauses of the Minnesota Constitution. We also hold that the district court did not err when it denied the State's motion seeking to dismiss the complaint based on legislative immunity and the failure to join necessary parties. We therefore reverse the decision of the court of appeals.
FACTS
In November 2015, appellants Alejandro Cruz-Guzman, et al.,[1] commenced an action against respondents State of Minnesota, the Minnesota Senate, the Minnesota House of Representatives, the Minnesota Department of Education, and Dr. Brenda Cassellius, the Commissioner of Education (collectively, the State).[2] Appellants seek to represent "a class of children enrolled, or expected to be enrolled during the pendency of this action, in the Minneapolis Public Schools, Special School District No. 1, and the Saint Paul Public Schools, Independent School District 625." When we review the denial of a motion to dismiss, we consider only the facts alleged in the complaint, and we accept those facts as true. See Gretsch v. Vantium Capital, Inc. , 846 N.W.2d 424, 429 (Minn. 2014).
The complaint contains copious data demonstrating a "high degree of segregation based on race and socioeconomic status" in Minneapolis and Saint Paul public schools. The public schools in Minneapolis and Saint Paul that appellants' children and other school-age children attend are "disproportionately comprised of students of color and students living in poverty, as compared with a number of neighboring and surrounding schools and districts." These segregated and "hyper-segregated" schools have significantly worse academic outcomes in comparison with neighboring schools and suburban school districts in measures such as graduation rates; pass rates for state-mandated Basic Standards Tests; and proficiency rates in math, science, and reading. Appellants describe these racially and socioeconomically segregated schools as "separate and unequal" from "neighboring and surrounding whiter and more affluent suburban schools" and detail the extensive harms of racial and socioeconomic segregation.
Appellants highlight several practices by the Minneapolis and Saint Paul public *6 schools, other school districts, charter schools, and the State as contributing to school segregation and inadequate educational outcomes. The practices include boundary decisions for school districts and school attendance areas; the formation of segregated charter schools and the decision to exempt charter schools from desegregation plans; the use of federal and state desegregation funds for other purposes; the failure to implement effective desegregation remedies; and the inequitable allocation of resources.
Appellants assert that the State has violated its constitutional duty under the Education Clause of the Minnesota Constitution, Minn. Const. art. XIII, § 1. Appellants contend that in addition to failing to fulfill its constitutional duty under the Education Clause, the State has violated the Equal Protection and Due Process Clauses of the Minnesota Constitution, Minn. Const. art. I, §§ 2, 7, by enabling school segregation and depriving students of their fundamental right to an adequate education.
The complaint requests declaratory and injunctive relief. Specifically, appellants have asked the district court to permanently enjoin the State from "continuing to engage in the violations of law," to order the State to "remedy the violations of law," and to order the State "to provide the [students] forthwith with an adequate and desegregated education." Appellants did not bring any direct claims against either the Minneapolis Public Schools or the Saint Paul Public Schools, and do not directly seek any remedies from any school district or charter school.
The State moved to dismiss the complaint on multiple grounds, including lack of subject matter jurisdiction, failure to state a claim upon which relief can be granted, and failure to join all interested persons. The district court concluded that Skeen v. State , 505 N.W.2d 299 (Minn. 1993), had "already held that Minnesota's Education Clause creates a fundamental right to education which will subject any state action that allegedly violates that right, including action by the legislature, to strict judicial scrutiny." The district court dismissed certain defendants from the action and dismissed the claims brought under the Minnesota Human Rights Act, but otherwise denied the motion to dismiss.
The State filed an interlocutory appeal, raising the following issues: (1) whether the district court erred by refusing to dismiss the complaint for lack of justiciability; (2) whether the district court erred by refusing to dismiss the claims against the Minnesota Senate and House of Representatives based on legislative immunity; and (3) whether the district court erred by refusing to dismiss the complaint for failure to join individual school districts and charter schools as parties.
The court of appeals reversed, holding that appellants' claims "present a nonjusticiable political question." Cruz-Guzman v. State , 892 N.W.2d 533, 541 (Minn. App. 2017). While acknowledging that segregation claims are justiciable, the court decided that all of appellants' claims are "rooted in a purported right to an education of a certain quality." Id. at 536-37 n.1. The court concluded that resolving appellants' claims would "require[ ] establishment of a qualitative educational standard, which is a task for the legislature and not the judiciary." Id. at 541. Accordingly, the court reversed the district court's order refusing to dismiss appellants' case for lack of justiciability. Id. Because the court's ruling on justiciability was dispositive, the court did not address the State's other arguments concerning legislative immunity or the failure to join necessary parties. See id. at 536, 541.
*7 We granted appellants' petition for further review, which raised the justiciability issue. We also granted the State's request for conditional cross-review, which asked us to review the legislative immunity and joinder issues.
ANALYSIS
This case comes to us on the State's appeal from the district court's order denying the State's motion to dismiss. A district court order denying a motion to dismiss for failure to state a claim is generally not immediately appealable as of right. See Minn. R. Civ. App. P. 103.03 ; Kokesh v. City of Hopkins , 307 Minn. 159, 238 N.W.2d 882, 884 (1976).[3] Immediate appellate review is available, however, for orders denying a motion to dismiss for lack of subject matter jurisdiction, government immunity, or the nonjoinder of necessary parties. See Kastner v. Star Trails Ass'n , 646 N.W.2d 235, 238 (Minn. 2002) (explaining that interlocutory appeal is available to review issues of subject matter jurisdiction and government immunity); Hunt v. Nev. State Bank , 285 Minn. 77, 172 N.W.2d 292, 301 (1969) (holding that there is "an appeal of right" from an order denying a motion to dismiss for nonjoinder of an indispensable party). We review de novo the district court's decision on the State's motion to dismiss. Park Nicollet Clinic v. Hamann , 808 N.W.2d 828, 831 (Minn. 2011). We "consider only the facts alleged in the complaint, accepting those facts as true[,] and must construe all reasonable inferences in favor of the nonmoving party." Bodah v. Lakeville Motor Express, Inc. , 663 N.W.2d 550, 553 (Minn. 2003).
I.
We turn first to the justiciability of appellants' claims that the State has failed to meet its obligations under the Education Clause, Article XIII, Section 1 of the Minnesota Constitution.
The presence of a justiciable controversy is "essential to our exercise of jurisdiction." Bicking v. City of Minneapolis , 891 N.W.2d 304, 308 (Minn. 2017) (citation omitted) (internal quotation marks omitted). Justiciability is separate and distinct from the merits of the case. See McCaughtry v. City of Red Wing , 808 N.W.2d 331, 341 (Minn. 2011). The State argues that appellants' claims present a political question that is not justiciable-that is, not "appropriate or suitable for adjudication by a court." Justiciability, Black's Law Dictionary (10th ed. 2014). Justiciability is a question of law that we review de novo. McCaughtry , 808 N.W.2d at 337. In addition, the interpretation of the constitution is a purely legal issue that we review de novo. Ninetieth Minn. State Senate v. Dayton , 903 N.W.2d 609, 617 (Minn. 2017).
The complaint specifies that appellants brought this lawsuit under the Education Clause of the Minnesota Constitution, which provides:
The stability of a republican form of government depending mainly upon the intelligence of the people, it is the duty of the legislature to establish a general and uniform system of public schools. The legislature shall make such provisions by taxation or otherwise as will secure a thorough and efficient system of public schools throughout the state.
*8 Minn. Const. art. XIII, § 1. Appellants assert that the Legislature has violated the duty imposed upon it by the Education Clause.
Although we have not had many occasions to interpret or apply the Education Clause, we have consistently adjudicated claims asserting violations of the Clause. In the earliest case, decided almost 150 years ago, we stated that the object of the constitutional clause on education "is to ensure a regular method throughout the state, whereby all may be enabled to acquire an education which will fit them to discharge intelligently their duties as citizens of the republic." Bd. of Educ. of Sauk Ctr. v. Moore , 17 Minn. 412, 416 (1871).
In another early case, we held that the education system provided by the Legislature did not violate the Education Clause when it "afford[ed] upon like terms the means for obtaining a common-school education to all resident scholars of the requisite age" and "ha[d] a general and uniform application to the entire state, so that the same grade or class of public schools [could] be enjoyed by all localities similarly situated." Curryer v. Merrill , 25 Minn. 1, 6 (1878).
In our most recent case involving the Education Clause, decided 25 years ago, we held that because the plaintiffs were "unable to establish that the basic system [was] inadequate" and "the existing system continue[d] to meet the basic educational needs of all districts," there was no "constitutional violation of the state constitutional provisions which require the state to establish a 'general and uniform system of public schools' which will secure a 'thorough and efficient system of public schools.' " Skeen v. State , 505 N.W.2d 299, 312 (Minn. 1993). In all of these cases, we resolved Education Clause claims; we did not dismiss these claims as nonjusticiable.
Here, the court of appeals focused on our refusal in those previous cases to "engage in educational-policy determinations" and held that appellants' Education Clause claims present a nonjusticiable political question. Cruz-Guzman , 892 N.W.2d at 540.[4] We have defined a political question as "a matter which is to be exercised by the people in their primary political capacity," or a matter that "has been specifically delegated to some other department or particular officer of the government, with discretionary power to act." In re McConaughy , 106 Minn. 392, 119 N.W. 408, 417 (1909). Under separation-of-powers principles, the judiciary cannot "exercise any of the powers properly belonging" to the Legislature unless "expressly provided" in the Minnesota Constitution. Minn. Const. art. III, § 1.
There is no dispute that the Minnesota Constitution assigns to the Legislature responsibility for establishing a public school system. Minn. Const. art. XIII, § 1 ; see Bd. of Educ. of Minneapolis v. Erickson , 209 Minn. 39, 295 N.W. 302, 303 (1940) ("By our constitution the mandate of establishing a general and uniform system of public schools was directed to the legislature."). To be sure, we have long held that matters of educational policy are matters that fall within legislative authority.
*9 Curryer , 25 Minn. at 5. However, we have also explained that the Education Clause constitutes "a mandate to the Legislature," "not a grant of power." Associated Schs. of Indep. Dist. No. 63 v. Sch. Dist. No. 83 , 122 Minn. 254, 142 N.W. 325, 327 (1913) ; see also State ex rel. Smith v. City of St. Paul , 128 Minn. 82, 150 N.W. 389, 391 (1914) (describing the provisions of the Education Clause as "mandates" that prescribe a "specified duty"). In fact, the Education Clause is the only section of the Minnesota Constitution that imposes an explicit "duty" on the Legislature. See Skeen , 505 N.W.2d at 313.
Although specific determinations of educational policy are matters for the Legislature, it does not follow that the judiciary cannot adjudicate whether the Legislature has satisfied its constitutional duty under the Education Clause. Deciding that appellants' claims are not justiciable would effectively hold that the judiciary cannot rule on the Legislature's noncompliance with a constitutional mandate, which would leave Education Clause claims without a remedy. Such a result is incompatible with the principle that where there is a right, there is a remedy. See State v. Lindquist , 869 N.W.2d 863, 873 (Minn. 2015) ("The right to a remedy for wrongs is '[a] fundamental concept of our legal system and a right guaranteed by our state constitution.' " (alteration in original) (quoting Anderson v. Stream , 295 N.W.2d 595, 600 (Minn. 1980) ) ); cf. Associated Schs. of Indep. Dist. No. 63 , 142 N.W. at 328 ("The creation of the obligation carries with it by necessary implication the right to its enforcement.").
Providing a remedy for Education Clause violations does not necessarily require the judiciary to exercise the powers of the Legislature. Appellants stress that their complaint "does not actually ask the court to institute any specific policy." Rather, their prayer for relief asks the district court to find, adjudge, and decree that the State has engaged in the claimed constitutional violations. Although appellants have also asked the district court to permanently enjoin the State "from continuing to engage in" the claimed constitutional violations and to order the State to "remedy" those violations, they "have consistently acknowledged that it is not the court's function to dictate to the Legislature the manner with which it must correct its constitutional violations."
In essence, appellants' claims ask the judiciary to answer a yes or no question-whether the Legislature has violated its constitutional duty to provide "a general and uniform system of public schools" that is "thorough and efficient," Minn. Const. art. XIII, § 1, and "ensure[s] a regular method throughout the state, whereby all may be enabled to acquire an education which will fit them to discharge intelligently their duties as citizens of the republic," Bd. of Educ. of Sauk Ctr. , 17 Minn. at 416. To resolve this question, the judiciary is not required to devise particular educational policies to remedy constitutional violations, and we do not read appellants' complaint as a request that the judiciary do so. Rather, the judiciary is asked to determine whether the Legislature has violated its constitutional duty under the Education Clause. We conclude that the courts are the appropriate domain for such determinations and that appellants' Education Clause claims are therefore justiciable.
Our conclusion rests upon a firm foundation. See Marbury v. Madison , 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803) ("It is, emphatically, the province and duty of the judicial department, to say what the law is."). It is well within the province of the judiciary to adjudicate claims of constitutional violations. See, e.g. , *10 Holmberg v. Holmberg , 588 N.W.2d 720, 726 (Minn. 1999). Although the Legislature is one of our co-equal branches of government, the legislative branch is "subject to the limitations imposed by the constitution; and, whenever it has clearly transcended those limitations," we have held that "it is the duty of the judiciary to so declare." Rippe v. Becker , 56 Minn. 100, 57 N.W. 331, 336 (1894).
In other words, although the constitution assigns to the Legislature the duty of establishing "a general and uniform system of public schools," Minn. Const. art. XIII, § 1, the interpretation of the constitution's language "is a judicial, not a legislative, question," Schowalter v. State , 822 N.W.2d 292, 301 (Minn. 2012). See also Rhodes v. Walsh , 55 Minn. 542, 57 N.W. 212, 213 (1893) (explaining that "the meaning or interpretation of a constitutional provision ... is for the judiciary to determine," even when the issue implicates privileges claimed by members of the Legislature).
This case asks the judiciary to make the same type of determination we have made repeatedly: whether the Legislature has satisfied its constitutional obligation under the Education Clause. See Skeen , 505 N.W.2d at 312 ; State ex rel. Klimek v. Sch. Dist. No. 70 , 204 Minn. 279, 283 N.W. 397, 398-99 (1939) ; Curryer , 25 Minn. at 6 ; Bd. of Educ. of Sauk Ctr. , 17 Minn. at 416. We agree with the district court that "there is no breach of the separation of powers for the [judiciary] to determine the basic issue of whether the Legislature is meeting the affirmative duty that the Minnesota Constitution places on it."[5]
Accordingly, we hold that appellants' constitutional claims under the Education Clause do not present a political question and are therefore justiciable.
II.
Appellants also claim that the State has denied them equal protection of the laws and due process, violating the Equal Protection and Due Process Clauses of the Minnesota Constitution. See Minn. Const. art. I, §§ 2, 7. Appellants assert that students are "confined to schools that are separate and segregated," that "such schools are separate and unequal," and that the State "ha[s] engaged in or permitted" practices that "have caused or contributed to the segregation of the Minneapolis and Saint Paul public schools." The complaint contains numerous facts that specifically support appellants' claims of segregation. Claims based on racial segregation in education are indisputably justiciable. See Brown v. Bd. of Educ. , 347 U.S. 483, 495, 74 S.Ct. 686, 98 L.Ed. 873 (1954).[6]
*11 Appellants further allege that they have been denied equal protection of the law and due process because the State has impinged on their fundamental right to an adequate education. Appellants argue that these claims are justiciable based on Skeen , 505 N.W.2d 299, in which we held that students have a fundamental right to an adequate education under the Minnesota Constitution. In appellants' view, their complaint simply asks the judiciary to rule on whether the State has impinged upon that fundamental right.
The State emphasizes that the Education Clause does not "include a qualitative component," and argues that even if there were an adequacy requirement, defining the applicable qualitative standard would be a matter for the Legislature, not the judiciary. The State maintains that the Minnesota Constitution "provides no principled basis for a judicial definition of [a] high quality" education. Therefore, the State contends that the relief requested by appellants would impermissibly require the judiciary to establish educational policy. The court of appeals agreed, concluding that even if students in Minnesota have a constitutional right to an adequate education, resolving appellants' claims would require the judiciary "to define the qualitative standard," which it viewed as a policy matter "entrusted to the elected representatives in our legislature and local branches of government." Cruz-Guzman , 892 N.W.2d at 538, 541.
We held in Skeen that "education is a fundamental right under the state constitution, not only because of its overall importance to the state but also because of the explicit language used to describe this constitutional mandate." 505 N.W.2d at 313. We specifically stated that "there is a fundamental right, under the Education Clause, to a 'general and uniform system of education' which provides an adequate education to all students in Minnesota." Id. at 315. We declared that the Education Clause "requires the state to provide enough funds to ensure that each student receives an adequate education and that the funds are distributed in a uniform manner." Id. at 318. We concluded that "[b]ecause the [then-existing] system provide[d] uniform funding to each student in the state in an amount sufficient to generate an adequate level of education which meets all state standards, the state ha[d] satisfied its constitutionally-imposed duty of creating a 'general and uniform system of education.' " Id. at 315.[7] The fundamental right recognized in Skeen was not merely a right to anything that might be labeled as "education," but rather, a right to a general and uniform system of education that is thorough and efficient, that is supported by sufficient and uniform funding, and that provides an adequate education to all students in Minnesota.
The dissent states that "nowhere in the plain language of the state constitution do the words 'adequate education' appear." Although that exact phrase does not *12 appear, the opening words of the Education Clause focus on "the intelligence of the people." Minn. Const. art. XIII, § 1. The framers could not have intended for the Legislature to create a system of schools that was "general and uniform" and "thorough and efficient" but that produced a wholly inadequate education. Id. Long before Skeen , we recognized that the people of Minnesota have a right to "an education which will fit them to discharge intelligently their duties as citizens of the republic." Bd. of Educ. of Sauk Ctr. , 17 Minn. at 416 (emphasis added). An education that does not equip Minnesotans to discharge their duties as citizens intelligently cannot fulfill the Legislature's duty to provide an adequate education under the Education Clause.
Of course, some level of qualitative assessment is necessary to determine whether the State is meeting its obligation to provide an adequate education. This assessment is an intrinsic part of our power to interpret the meaning of the constitution's language. See Schowalter , 822 N.W.2d at 301. The very act of defining the terms used in the Education Clause and determining whether the constitutional requirements have been met inevitably requires a measure of qualitative assessment. See Pauley v. Kelly , 162 W.Va. 672, 255 S.E.2d 859, 874-77 (1979) (defining "thorough," "efficient," and "education" to determine compliance with state constitutional requirements).
We cannot fulfill our duty to adjudicate claims of constitutional violations by unquestioningly accepting that whatever the Legislature has chosen to do fulfills the Legislature's duty to provide an adequate education. If the Legislature's actions do not meet a baseline level, they will not provide an adequate education. Skeen , 505 N.W.2d at 315 ; cf. Sheff v. O'Neill , 238 Conn. 1, 678 A.2d 1267, 1292 (1996) (stating that "it logically follows that the education guaranteed in the state constitution must be, at the very least, within the context of its contemporary meaning, an adequate education" and that the government "may not herd children in an open field to hear lectures by illiterates" to fulfill its duty to provide an education (citation omitted) (internal quotation marks omitted) ).
We will not shy away from our proper role to provide remedies for violations of fundamental rights merely because education is a complex area. The judiciary is well equipped to assess whether constitutional requirements have been met and whether appellants' fundamental right to an adequate education has been violated. See, e.g., Rose v. Council for Better Educ., Inc. , 790 S.W.2d 186, 212-13 (Ky. 1989) ; Pauley , 255 S.E.2d at 877-78. Although the Legislature plays a crucial role in education, it is ultimately the judiciary's responsibility to determine what our constitution requires and whether the Legislature has fulfilled its constitutional duty.
For these reasons, we conclude that appellants' claims alleging violations of the Equal Protection and Due Process Clauses of the Minnesota Constitution are justiciable.
III.
We next address an issue raised by the State in its cross-appeal: whether the Speech or Debate Clause of the Minnesota Constitution, Minn. Const. art. IV, § 10, immunizes the Minnesota House of Representatives and Minnesota Senate from appellants' claims. This is an issue of constitutional interpretation that we review de novo. See City of Golden Valley v. Wiebesick , 899 N.W.2d 152, 156 (Minn. 2017).
Our analysis begins with the text of the Minnesota Constitution. See *13 League of Women Voters Minn. v. Ritchie , 819 N.W.2d 636, 646 (Minn. 2012). The Speech or Debate Clause provides:
The members of each house in all cases except treason, felony and breach of the peace, shall be privileged from arrest during the session of their respective houses and in going to or returning from the same. For any speech or debate in either house they shall not be questioned in any other place.
Minn. Const. art. IV, § 10. We have described this clause as "grant[ing] absolute privilege from defamation liability to members of the State Senate and House of Representatives in the discharge of their official duties." Zutz v. Nelson , 788 N.W.2d 58, 62 (Minn. 2010).
In this case, the House and Senate argue that they must be dismissed from this action because the Speech or Debate Clause applies broadly and provides immunity from suit for any actions taken in their legislative capacity. We disagree. We interpret constitutional provisions "in light of each other in order to avoid conflicting interpretations." Clark v. Pawlenty , 755 N.W.2d 293, 305 (Minn. 2008). As appellants suggest, the House and Senate are essentially arguing that the Minnesota Constitution provides them with absolute immunity for violating a duty that the constitution specifically imposes on the Legislature. We decline to interpret one provision in the constitution-the Speech or Debate Clause-to immunize the Legislature from meeting its obligation under more specific constitutional provisions-the Education, Equal Protection, and Due Process Clauses. Moreover, none of the cases that the House and Senate cite in support of their claims of legislative immunity involves a legislature's failure to comply with an express constitutional mandate. We therefore hold that the protections of the Speech or Debate Clause do not extend to claims that the Legislature has violated its duty under the Education Clause or has violated the Equal Protection or Due Process Clauses.
IV.
Finally, we address the State's argument that the district court lacks jurisdiction over appellants' claims because appellants failed to join all necessary parties. The State contends that the claims and requested remedies in this case "directly implicate[ ] actions only school districts and charter schools can take, but they have not been included as parties." The State bases its argument on both the Uniform Declaratory Judgments Act, Minn. Stat. §§ 555.01 -.16 (2016), and Rule 19 of the Minnesota Rules of Civil Procedure. The State's argument presents issues relating to the interpretation of a statute and a procedural rule, both of which we review de novo. Cocchiarella v. Driggs , 884 N.W.2d 621, 624 (Minn. 2016) (statutory interpretation); Contractors Edge, Inc. v. City of Mankato , 863 N.W.2d 765, 768 (Minn. 2015) (interpretation of procedural rules).
A.
We begin by addressing the Uniform Declaratory Judgments Act. "A declaratory judgment is a 'procedural device' through which a party's existing legal rights may be vindicated so long as a justiciable controversy exists." Weavewood, Inc. v. S & P Home Invs., LLC , 821 N.W.2d 576, 579 (Minn. 2012) ; see Minn. Stat. § 555.01 (stating that courts have the "power to declare rights, status, and other legal relations" through the issuance of a declaratory judgment). Under Minn. Stat. § 555.11, "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and *14 no declaration shall prejudice the rights of persons not parties to the proceeding."
The State argues that school districts and charter schools are necessary parties to this action under section 555.11 because the relief that appellants seek would affect matters that school districts and charter schools control under the current statutory scheme. For example, the State contends that the "requested 'adequate and desegregated' remedy no doubt would affect school district boundaries and attendance zones," as well as school district policies regarding community schools. The State also argues that the potential remedies could affect other matters such as "funding allocation, class assignments, teacher assignments, and discipline." The State claims that all of these matters, by statute, fall within the discretion of the individual school districts or charter schools, not the State. See Minn. Stat. §§ 122A.40 ; 122A.41, subd. 1(b) ; 123A.45 -.50; 123B.02, subd. 1 (2016).
Appellants respond that the State has misrepresented the relief they are seeking. According to appellants, the Declaratory Judgments Act has no bearing on the district court's jurisdiction because they have not asserted a claim under the Act. Instead, appellants state that their complaint alleges that the Legislature has failed to comply with its affirmative duty under the Education Clause and that they are asking the district court to issue an injunction ordering the Legislature to comply with that affirmative duty. According to appellants, the district court has "inherent authority to remedy the infringement of a constitutional right," and they do not need to invoke the Declaratory Judgments Act to obtain the relief they are seeking.
Regardless of whether appellants have specifically sought relief under the Declaratory Judgments Act, the district court concluded that the school districts and charter schools are not necessary parties because appellants are seeking "remedies from the State, not individual school districts or charter schools." We agree that the relief appellants are seeking from the State does not require the joinder of school districts and charter schools.[8] The State's argument regarding potential impacts on school districts and charter schools prematurely speculates about hypothetical remedies. Even if the school districts and charter schools might eventually be affected by actions potentially taken by the State in response to this litigation, those possible effects are not enough to require that the school districts and charter schools be joined as necessary parties. As the district court noted, "many non-parties are bound to be affected by a judicial ruling in an action regarding the constitutionality of state statutes or state action, but they cannot all be required to be a part of the suit." We therefore conclude that the district court did not err when it denied the State's motion to dismiss the complaint for lack of jurisdiction under the Declaratory Judgments Act.
B.
We next address Rule 19 of the Minnesota Rules of Civil Procedure. Rule 19.01 provides that a person "shall be joined as a party in the action if ... in the person's absence complete relief cannot be accorded among those already parties." Rule 19.02 provides that if a necessary person "cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable."
*15 According to the State, school districts and charter schools "are indispensable; if they cannot be joined, the Complaint must be dismissed." As discussed above, school districts and charter schools are not indispensable parties when relief is sought solely from the State. The district court therefore did not err when the court denied the State's motion to dismiss the complaint under Rule 19.
CONCLUSION
For the foregoing reasons, we reverse the decision of the court of appeals.
Reversed.
THISSEN, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.
DISSENT

Appellants are Alejandro Cruz-Guzman, as guardian and next friend of his minor children; Me'Lea Connelly, as guardian and next friend of her minor children; Ke'Aundra Johnson, as guardian and next friend of her minor child; Izreal Muhammad, as guardian and next friend of his minor children; Roxxanne O'Brien, as guardian and next friend of her minor children; Diwin O'Neal Daley, as guardian and next friend of his minor children; Lawrence Lee, as guardian and next friend of his minor child; and One Family One Community, a Minnesota nonprofit corporation.

Appellants also brought claims against defendants Governor Mark Dayton; Sandra L. Pappas, President of the Minnesota Senate; and Kurt Daudt, Speaker of the Minnesota House of Representatives. The district court dismissed Governor Dayton from this suit based on separation-of-powers concerns. The district court also dismissed the two individual legislators, concluding that they are "immune in this suit" under the Speech or Debate Clause of the Minnesota Constitution, Minn. Const. art. IV, § 10. The dismissal of these defendants is not at issue in this appeal.
The intervenors in the district court are three charter schools in Minneapolis and Saint Paul and parents of students who attend those charter schools: Higher Ground Academy, Mohamed Abdilli, Friendship Academy of the Arts, Sharmaine Russell, Paladin Career and Technical High School, and Rochelle LaVanier.

The court of appeals denied the State's petition seeking discretionary review of the district court's refusal to dismiss appellants' claims on the merits. Cruz-Guzman v. State , No. A16-1267, Order at 2, 4 (Minn. App. filed Sept. 13, 2016). The merits of appellants' claims are therefore not before us.

The court of appeals concluded that this case presents a nonjusticiable political question based on the Supreme Court's analysis in Baker v. Carr , which identified six circumstances that federal courts should examine in deciding whether a case presents a political question. 369 U.S. 186, 217, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). The court of appeals held that the claims here "are so enmeshed with political elements that they present a nonjusticiable political question." Cruz-Guzman , 892 N.W.2d at 540. We have not adopted the Supreme Court's analysis in Baker v. Carr to resolve whether a case presents a political question, and we decline to do so here.

The State cites to decisions of other state supreme courts, which it describes as "dismiss[ing] similar complaints on justiciability grounds." See, e.g. , Comm. for Educ. Rights v. Edgar , 174 Ill.2d 1, 220 Ill.Dec. 166, 672 N.E.2d 1178, 1190-93 (1996) ; Neb. Coal. for Educ. Equity & Adequacy v. Heineman , 273 Neb. 531, 731 N.W.2d 164, 176-83 (2007) ; Okla. Educ. Ass'n v. State ex rel. Okla. Legislature , 158 P.3d 1058, 1065-66 (Okla. 2007) ; Marrero ex rel. Tabalas v. Commonwealth , 559 Pa. 14, 739 A.2d 110, 113-14 (1999). As appellants note, these cases are distinguishable because there are "significant differences in the language used in each state constitution." For example, the Nebraska Constitution simply provides that "it shall be the duty of the Legislature to pass suitable laws ... to encourage schools and the means of instruction." Neb. Const. art. I, § 4 (emphasis added).

The dissent concedes that a claim of segregated schools is justiciable, but maintains that appellants' claims are not "traditional" segregation claims and therefore the claims are not justiciable. It is self-evident that a segregated system of public schools is not "general," "uniform," "thorough," or "efficient." Minn. Const. art. XIII, § 1. Regardless of whether the context is a "traditional" segregation claim or a different type of claim, courts are well equipped to decide whether a school system is segregated, and have made such determinations since Brown , 347 U.S. at 495, 74 S.Ct. 686.

The dissent concludes that "the references to an 'adequate education' in Skeen are dicta." We disagree. This discussion of adequacy was not dicta; it was a necessary step in the court's analysis. The court considered the challenge to the financing of the education system only "[o]nce [the] baseline level of adequacy and uniformity ha[d] been established." Skeen , 505 N.W.2d at 315. Furthermore, when we have expressed an opinion in a decision, that opinion should not be lightly disregarded, especially when the court does not characterize it as superfluous to the ultimate holding. State v. Heinonen , 909 N.W.2d 584, 589 n.4 (Minn. 2018).

Our decision here has no impact on the right of school districts and charter schools to move to intervene. See Minn. R. Civ. P. 24.01 -.03.