36  420
e36  432
36  434
36  436
e36  437

(No. 4877.  Decided December 29, 1904.)

RAND McNALLY & COMPANY, *Appellant,* v. M. G. ROYAL
*et al., as Directors of School District No. 1, of Thurs-
ton County, Respondents and Appellants.*[1]

APPEAL—REVIEW—HARMLESS ERROR — PLEADINGS — MOTION TO
STRIKE.  It is not prejudicial error to refuse to strike out aver-
ments from a complaint which amount to conclusions of law.

SCHOOLS—COURSE OF STUDY ADOPTED BY STATE BOARD—EVIDENCE
OF ADOPTION—SUFFICIENCY.  There is sufficient evidence to sup-
port a finding that the state board of education adopted a uni-
form series of text books and a course of study for the public
schools, where it appears that the same was published through-
out the state, apparently by their authority, and was generally
recognized as valid and acted upon by school districts, including
the defendant.

SCHOOLS—STATE BOARD OF EDUCATION—CONTRACTS—EXECUTION
OF AGREEMENT TO FURNISH TEXT BOOKS.  A contract with a pub-
lisher to furnish text books for the use of the public schools
of the state appears to be sufficiently executed by the state board
of education when it is signed by the president and secretary of
the board, when it was suggested by the board, without objec-
tion, at the time the subject was discussed, that such signatures
would be sufficient.

SAME—CONTRACT WITH PUBLISHER TO FURNISH TEXT BOOKS—
VALIDITY—ATTACK BY SCHOOL DISTRICT.  Where the state board of
education has entered into a written contract with a publisher
for furnishing the text books prescribed by the course of study
for the public schools of the state, a school district can not
question its validity in an action brought to enjoin the district
from using other books on the same subject, when the state has
raised no objection thereto; since the district was not a party to
the contract.

SCHOOLS—FOLLOWING COURSE OF STUDY PRESCRIBED BY STATE
BOARD—BOND OF PUBLISHER—APPROVAL.  The fact that the pub-
lisher of text books, who is under contract with the state board
of education to supply all the books required by the public schools

[1]Reported in 78 Pac. 1103.

of the state, fails to have its bond to the state duly approved, does not excuse a school district board for failing to enforce the course of study prescribed by the state board.

SAME—UNIFORM COURSE OF STUDY—SCHOOL DISTRICT REGULA-TIONS—COMPLIANCE WITH STATE COURSE. Where the course of study prescribed by the state board of education requires the use of certain text books in specified grades, a regulation of a school district that the pupils in such grades shall use such books until they become "proficient therein" is a sufficient compliance with the state course of study.

SAME—INJUNCTION. But in such case, where such books prescribed in the state course of study are not required by the district to be used at all in a certain grade, whether inadvertently or intentionally, it is not a compliance with the state course of study, and injunction is properly issued to compel compliance therewith by the district.

Cross-appeals from a judgment of the superior court for Thurston county, Linn, J., entered February 2, 1903, upon the findings and decision of the court, after a trial on the merits before the court without a jury, granting part of the relief prayed for in an action to compel compliance with the course of study prescribed for public schools. Affirmed.

*Vance & Mitchell* and *Ballinger, Ronald & Battle,* for appellant.

*C. D. King, M. G. Royal,* and *Troy & Falknor,* for respondents.

PER CURIAM.—The plaintiff is a corporation, organized under the laws of the state of Illinois, and authorized to do business in the state of Washington. It is the publisher of certain text books on reading, designated as Lights to Literature No. 1 and No. 2, and New Century Reader No. 3, No. 4, No. 5, and No. 6. In May, 1900, it contracted in writing with the state board of education to furnish said books in sufficient quantities for the

use of the common schools of Washington, for the full term of five years from and after September 1, 1900, at prices stipulated in the contract "in accordance with the law governing the same." The defendants constitute the board of directors of school district No. 1, of Thurston county, which district embraces within its boundaries the city of Olympia, a city containing less than ten thousand inhabitants. The plaintiff seeks, in this action, to obtain a mandatory injunction against the defendants, commanding them, in their official capacity, to cause plaintiff's publications—the books above mentioned—to be used in the schools of Olympia in the manner and at the times indicated in the course of study prescribed by the state board of education, and as provided for in its contract with said state board. The pleadings in this case are almost identical with the pleadings in the case of *Westland Publishing Co. v. Royal (ante* p. 399), just decided, and, as they are set forth quite fully in the opinion of the court in that case, we do not deem it necessary to reproduce them here.

By § 27 of the code of public instruction (Laws 1897, p. 356, *et seq.*), the state board of education was empowered, among other things, to adopt or readopt, according to law, a uniform series of text books for the use of the common schools throughout the state, and to prepare a course of study for the primary, grammar and high school departments of the common schools. Section 105 of said code provides the manner in which said state board shall adopt such uniform system of text books for the use of the common schools, including graded schools, and also empowers the state board of education to enter into contracts with the publishers of adopted books for supplying the same for five years, to take effect on the first day of September following the date of adop-

tion.   Section 73 of said code provides that, in city or town districts, where the number of children of school age is sufficient to require the employment of more than one teacher, the school or schools therein shall be graded in such a manner as the directors thereof shall deem best suited to the wants and conditions of such districts; provided, that the course of study established for such districts shall not be inconsistent with the laws of this state. According to the course of study prepared by the state board of education, the plaintiff was entitled, under its contract, to have its series of readers used in the schools of Olympia in grades one to six, inclusive, during the life of its contract.   But according to the course of study for the schools of the city, established by the defendant board of directors, the New Century Reader No. 6 was not required to be used in the sixth grade in such schools, or at all.

Upon the trial the court found, in effect, among other things, that the defendants had required all of the text books mentioned in plaintiff's complaint to be used in the schools of Olympia in a lawful and proper manner, except reader No. 6, and thereupon rendered a judgment in favor of the plaintiff, commanding the defendant board of directors to require the use of, and to use, the said text book, New Century Reader No. 6, in the schools of the city, as an exclusive text book on reading, during the sixth year of said schools.   The plaintiff has appealed from this judgment for the reason, stated generally, that it is entitled to greater relief, and the defendants have appealed upon the alleged ground that the plaintiff is entitled to no relief whatever.

The defendants object to the action of the trial court in refusing to strike out certain allegations of the complaint, and in overruling their demurrer to the com-

plaint. But we think neither of these objections is well founded. We are unable to see how the statements which the defendants asked to have eliminated from the complaint could possibly have prejudiced their rights upon the trial. The complaint is lengthy and circumstantial, and we think it states a cause of action, even conceding, as defendants assert, that certain averments thereof amount to conclusions of law rather than statements of facts.

The defendants insist that the state board of education did not adopt a list of text books for use in the public schools of the state, as alleged in plaintiff's complaint, but we are of the opinion that the evidence is sufficient to justify the finding that that board not only adopted a uniform series of text books for the use of the common schools of the state, but prepared a course of study for the various departments of the common schools. At all events, it appears that a series of text books and a course of study for the public schools throughout the state were published, apparently by authority of the state board of education; both of which have, as a matter of fact, been recognized as valid, and acted upon accordingly by the various boards of school directors, including the defendant board. And that being so, it would seem that the defendants ought not now to be heard to challenge either the state adoption of text books or the state course of study.

It is further insisted by the defendants that the plaintiff cannot successfully maintain this action for the reason that its alleged contract is illegal and void. This claim of illegality is based upon the propositions, (1) that plaintiff's pretended contract was not executed by the state board of education, and (2) that, if it was properly executed, it was not such a contract as said.

board was authorized to enter into with the plaintiff.
The contract in question was signed only by the presi-
dent and the secretary of the board, and, although the evi-
dence in this case does not show that those individuals
were expressly authorized by the board to execute the
cotnract on its behalf, the testimony in another case
submitted herewith, and which by stipulation of counsel
is to be considered as evidence herein, does show that the
subject of the method of executing contracts with the
publishers of school books was discussed by the state
board of education, and that it was suggested (without
objection so far as the evidence discloses) that the signa-
tures of the president and secretary to such contracts
would be sufficient.   We think the contract cannot be said
to be invalid on the alleged ground that it was not executed
as required by law.

Neither are we disposed to hold it invalid on the
ground that the state board of education had no power
to make it.   As we have seen, the power to enter into
contracts with publishers for the supplying of text books
for use in the public schools is expressly conferred by
law upon the state board of education.   Boards of school
directors are not parties to such contracts, and therefore
really have no right to question their sufficiency or legal-
ity, in actions such as the one at bar.   In the language
of the supreme court of Minnesota, "That belongs to the
parties to the contract."   *Curryer v. Merrill,* 25 Minn. 1.
See, also, *State ex rel. Roberts v. School Directors,* 74
Mo. 21.   This contract itself provides that it shall be
null and void at the option of the state board of educa-
tion, if the plaintiff fail to comply with all the terms
thereof, provided a reasonable notice be given to the
plaintiff, together with a reasonable opportunity "to ful-
fill the terms of this agreement."   The plaintiff has at

all times faithfully complied with the terms of its contract, and the evidence fails to show that any objections thereto have ever been made, either by the state directly, or by its board of education. And, under such circumstances, it would be, to say the least, extremely unjust to the plaintiff to declare the contract invalid at the instance of a third party having no interest therein or right to interfere therewith.

It does not appear from the evidence that the bond, given by the plaintiff to insure the performance of its contract, was formally approved by the state board of education and the attorney general, as provided by the statute, and the defendants insist that that alone is sufficient to preclude the plaintiff from recovering in this suit. The evidence does show, however, that the bond was delivered to the state superintendent of schools, who was the president of the board of education, and was filed by him, and kept in the proper place in his office, which acts tend to show, at least inferentially, that the bond was in fact approved by the board. Of course the plaintiff should have had the bond regularly approved, both by the board of education and by the attorney general. But that, again, is a matter which in no way concerns the defendants. The duties and powers of school directors are defined and limited by law. It is their positive duty, under § 40 of the act of 1897, supra, "to enforce the course of study prescribed by the state board of education." It is also their duty, as we have seen, under § 73, to grade the schools in districts, such as the one here under consideration, in such a manner as they shall deem best suited to the wants and conditions of their district. And the same section empowers the directors to establish a course of study for such districts not inconsistent with the laws of the state, which means, as

we endeavor to show in the *Westland Publishing Co.'s* case, above mentioned, not inconsistent with the course of study prescribed by the state board of education.

The only remaining question which it is necessary to discuss is whether the defendants caused the plaintiff's readers Nos. 1 to 5, inclusive, to be used during the first, second, third, fourth and fifth years, or grades, for the time, in the manner, and with the good faith contemplated by the state course of study. It appears from the evidence that each pupil in any one of those grades was required to purchase the reader prescribed for such grade and to study the same until he or she became "proficient therein." And, in our opinion, nothing more than that was required by the plaintiff's contract, so far as the grades above mentioned are concerned. But with regard to the sixth grade the case is different, for in that grade plaintiff's reader was not used at all. There is testimony in the record, however, going to show that it was omitted from the established course of study through mere inadvertence on the part of the board of directors, and not intentionally. But, if that be true, the mistake should, nevertheless, be corrected.

The judgment is affirmed, but without cost to either party in this court.