OPINION OF THE COURT
Memorandum.
Judgment reversed without costs and judgment directed to be entered in favor of defendant against each plaintiff in the sum of $800.
*895 In the fall of 1993, the plaintiffs Marina A. André and Peter Broome applied for admission to the School of Computer Science and Information Systems of Pace University. Plaintiffs enrolled in the graduate level class CS 502 "Fundamental Pascal Programming”, which was the first in a five course sequence of required courses designed by the Pace University Computer Science Departments leading to a Graduate Certificate in Programming. Prior to the commencement of the course, the plaintiffs met with Dr. Narayan Murthy, Chairman of the Department of Computer Science, for advisement and expressed concern with regard to the adequacy of their mathematical background for the course. Broome had a baccalaureate in English literature. His math background included geometry and algebra taken in high school and undergraduate level trigonometry. André had a Master’s degree in film. Her math background included a high school class in calculus, and statistics taken at an undergraduate level. Based on their academic records and their discussion, Dr. Murthy assured plaintiffs in substance that their background was sufficient to enter the graduate program and that they would have no problems with the course. The tuition cost for the class was $1,655, and plaintiffs paid $855 each under the school’s installment plan. They attended the first class and were given a rudimentary sorting problem which they had no problem solving. At the second class, they obtained the course textbook "Condensed Pascal” and were assigned several problems from chapter 1 of the book. At the third session of class, plaintiffs advised Professor Caroll Zahn that they had difficulty in solving problem 1-6. Professor Zahn apparently spent substantial portions of the third and fourth class discussing the problem, while continuing to assign problems from chapter 2 of the book. During the fourth session, Professor Zahn distributed a computer generated solution to problem 1-6. By the fifth session, October 20, 1993, the plaintiffs were still not able to solve the problem, and advised Professor Zahn of their difficulty in understanding the math concepts involved. On October 25, 1993, the plaintiffs met with Dr. Murthy and expressed their dissatisfaction with the course. On October 27, 1993, the plaintiffs officially withdrew from the class. Plaintiffs also distributed a petition dated October 27, 1993, which was signed by approximately 13 students in the class, expressing, inter alia, dissatisfaction with the choice of textbook and the focus on math and science problems. On November 1, 1993, the students met with Dean Susan Merritt and requested a refund of the tuition paid. Dean *896 Merritt informed them that this was against school refund policy, but offered a tuition credit for a subsequent semester in which another instructor would be teaching the course. The plaintiffs refused and thereafter each commenced an action to recover the sum of $885, based on the following claim: "Tuition refund for class CS 502 which was not what it said in course catalogue $855 and a refund for book required for the class $30.00”. Defendant asserted a counterclaim against each plaintiff for $800, representing the remaining balance of the tuition due. After trial, the court entered a single judgment in favor of both plaintiffs, awarding each plaintiff $885 in actual damages plus $59.73 interest and $5.58 in costs, damages of $115 pursuant to General Business Law § 349 (h), and punitive damages of $1,000. In its decision, the court found the defendant liable for breach of contract, rescission based upon want of consideration, failure of consideration, unconscionability, and misrepresentation, breach of fiduciary duty, educational malpractice and violation of General Business Law § 349. For the reasons stated herewith we reverse the judgment in favor of plaintiffs and direct judgment in favor of defendant against each plaintiff on its counterclaim for the remaining tuition due of $800.
The relationship between plaintiff and Pace University is contractual in nature (Prusack v State of New York, 117 AD2d 729, 730; State of New York v Fenton, 68 AD2d 951; Eden v Board of Trustees, 49 AD2d 277; Cardo v Pace Univ., NYLJ, June 2, 1994, at 29, col 5). The rights and obligations of the parties, as contained in the university’s bulletins and catalogs became a part of the parties’ contract (Vought v Teachers Coll., 127 AD2d 654, 655; Prusack v State of New York, supra, at 730; Matter of Auser v Cornell Univ., 71 Misc 2d 1084; Silver v Queens Coll., 63 Misc 2d 186). However, the courts of this State have consistently declined to entertain actions sounding in "educational malpractice,” although quite possibly cognizable under traditional notions of tort law, as a matter of public policy (Hoffman v Board of Educ., 49 NY2d 121, 125; Donohue v Copiague Union Free School Dist., 47 NY2d 440, 444). As was stated by the Court of Appeals in Donohue v Copiague Union Free School Dist. (47 NY2d 440, 444-445, supra): "To entertain a cause of action for 'educational malpractice’ would require the courts not merely to make judgments as to the validity of broad educational policies — a course we have unalteringly eschewed in the past — but, more importantly, to sit in review . of the day-to-day implementation of these policies.” The public *897 policy considerations underlying judicial noninterference in tort-based educational malpractice claims is equally applicable when the action is brought against a private educational institution and is formulated in contract (Paladino v Adelphi Univ., 89 AD2d 85; see also, Torres v Little Flower Children’s Servs., 64 NY2d 119, 128). In Paladino v Adelphi Univ., plaintiff sought to recover damages for, inter alia, breach of contract based upon the defendant’s alleged failure to provide a quality education. In rejecting plaintiff’s claim, the Court reasoned as follows: "Where the essence of the complaint is that the school breached its agreement by failing to provide an effective education, the court is again asked to evaluate the course of instruction. It is similarly called upon to review the soundness of the method of teaching that has been adopted by an educational institution. There is nothing novel about a contract action that would permit for judicial intervention into the process of learning. For in effect, the claim still requires judicial displacement of complex educational determinations” (Paladino v Adelphi Univ., supra, at 89-90).
In the instant case, the plaintiffs’ causes of action for breach of contract are based upon defendant’s alleged failure to deliver the course described in the university’s catalog and as represented by Dr. Murthy during their consultation. The plaintiffs’ testimony at trial in substance was that although the course was described as a basic Pascal programming course in the catalog and Dr. Murthy had assured them that their math background would be sufficient, it was taught at an advanced level, and the Pascal textbook chosen by Professor Zahn inappropriately focused on math and science based problems which were beyond their level of comprehension. It is clear that the essence of plaintiffs’ breach of contract claim necessarily entails an evaluation of the adequacy and quality of the textbook used and the effectiveness of the pedagogical method chosen by the professor to teach the graduate Pascal programming class. In order to determine whether "Condensed Pascal” was inappropriate because of its focus on math and science based problems, this court would be required to examine not only "Condensed Pascal”, and its earlier, allegedly simpler version, but also other possible available textbooks on Pascal programming language, and to conduct a comparative analytical review in order to ascertain their relative merits and appropriateness for this particular course. Additionally the court would be engaged in a comprehensive review of a myriad of educational and pedagogical factors, as well as administrative *898 policies that enter into the consideration of whether the method of instruction and choice of textbook was appropriate, or preferable, for a graduate level course in Pascal programming language leading up to a Graduate Certificate in Programming. Such inquiry would constitute a clear "judicial displacement of complex educational determinations’’ (Paladino v Adelphi Univ., 89 AD2d 85, 90, supra), that is best left to the educational community. A different situation might be presented if defendant were to provide "no educational services” or failed to meet its contractual obligation to provide certain specified services, such as a designated number of hours of instruction (Paladino v Adelphi Univ., supra, at 92; see also, Torres v Little Flower Children’s Servs., supra, at 128). However, contrary to the trial court’s determination, no such circumstances were presented here warranting a finding of liability for breach of contract. The class "Fundamental Pascal Programming” was described in the Pace University 1993-1994 Graduate Catalog and Application as follows: "Concentrated orientation course for students interested in pursuing graduate work in computer science. Basic computer terminology is presented in conjunction with topics in elementary architecture and operating systems. The Pascal programming language is used to provide the concepts of problem analysis and program design. Programming topics include control structures, I/O arrays, records, functions and procedures”. Plaintiffs did not claim that there was a complete failure to provide the Pascal programming course, nor, for example, that instead of the Pascal language, defendant delivered a course on Cobol programming. Nor did plaintiffs claim that the textbook chosen for instruction was not a Pascal programming language textbook. Rather, the essence of plaintiffs’ challenge was the propriety and efficacy of the Pascal textbook actually chosen and the methodology employed to teach the Pascal programming language. Moreover, it was never claimed that during consultation Dr. Murthy made any promises to provide certain specified services which the defendant failed to deliver. Nor was it claimed by either plaintiff that Dr. Murthy represented that there would be no mathematics, but only that their mathematical background consisting of high school math would be sufficient. Dr. Murthy’s representation that the plaintiffs would have no difficulty with the class was mere expression of opinion which cannot give rise to an actionable claim. In determining that the defendant had breached its contract, on the ground, inter alia, that the "textbook [was] plainly unsuited for the *899 plaintiffs and the rest of the class”, the court below improperly engaged in judicial evaluation of a course of instruction that the courts of this State have consistently held is the proper domain of educators and educational institutions entrusted to the task. Moreover, in imposing liability upon defendant for educational malpractice, based on its finding that the professor was not equipped to teach a beginner’s course and had negligently chosen the textbook, the court below acted in direct contravention of the well-settled law in New York that, upon public policy grounds, a cause of action for educational malpractice should not be entertained. We furthermore note that the decision of the court below was based on numerous erroneous findings of fact which were unsupported by the evidence at trial, and that the court’s citation of selective excerpts from the preface of the "Condensed Pascal” textbook, to the exclusion of other descriptive text indicating the full scope of the contents of the book, created a misleading impression of the over-all purpose, scope and content of the textbook. The court also found that defendant was liable for breach of fiduciary duty, violation of General Business Law § 349, and determined that plaintiffs were entitled to rescission of the contract based on lack of consideration and on the ground that defendant’s description of the class was "false, deceptive and misleading”. These causes of action in essence constituted mere reformulations of an educational malpractice claim, which was improperly entertained by the court. Accordingly, there is no basis to impose damages pursuant to General Business Law § 349, nor any basis for the imposition of punitive damages. In any event, there is no showing that defendant’s conduct was "malicious and vindictive to justify awarding punitive damages or that [defendant’s] conduct was wanton and reckless” (Reinah Dev. Corp. v Kaaterskill Hotel Corp., 59 NY2d 482, 487-488).
The court erroneously dismissed the defendant’s counterclaim for the remaining balance of the tuition due. The plaintiffs were well aware of the defendant’s tuition refund policy, and that withdrawal after the fifth week of class would not entitle them to any refund. Although plaintiffs did not obtain an appointment with the Dean until October 25, 1993, there is no indication in the record that the plaintiffs’ delay in their official withdrawal from the course was not a matter of personal choice, with full knowledge of the consequences upon their ability to obtain a refund of the tuition (see, Cardo v Pace Univ., supra).