Peter ALSIDES, et al., Appellants (C1–98–1354), Respondents (C4–98–1672),

v.

BROWN INSTITUTE, LTD., a Delaware corporation, Respondent (C1–98–1354), Appellant (C4–98–1672).

Nos. C1–98–1354, C4–98–1672.

Court of Appeals of Minnesota.

April 13, 1999.

**470**

Mark B. Peterson, Robert K. Shelquist, Bruce L. McLellan, Plunkett, Schwartz, Peterson, P.A., Minneapolis, MN; and Scott A. Johnson, Todd M. Johnson, Minnetonka (for Peter Alsides, et al.)

Shannon M. O'Toole, Kevin M. Lindsey, Marcus A. Mollison, Minneapolis, MN (for Brown Institute, Ltd.)

Considered and decided by HARTEN, Presiding Judge, HUSPENI, Judge, and HOLTAN, Judge.*

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

HUSPENI **, Judge.

Appellant students argue that the district court erred when it recharacterized their complaint alleging fraud, misrepresentation, breach of contract, and violations of the Consumer Fraud and Uniform Deceptive Trade Practices Acts as a claim for educational malpractice and dismissed it on summary judgment. Appellants further argue that the district court erred when it concluded, as a matter of law, that the Consumer Fraud and Uniform Deceptive Trade Practices Acts do not apply to trade-school instruction or allow the recovery of damages. In a separate appeal consolidated with this case, respondents challenge the district court's decision to reduce respondent's award for costs and disbursements. We affirm in part, reverse in part, and remand.

## FACTS

Appellants are former students of respondent Brown Institute, Ltd., a for-profit, proprietary trade school. In 1994, Brown commenced a 12–month–long Personal Computer/Local Area Network (PC/LAN) program that it claimed would prepare students for entry-level positions as PC installers and repairers and LAN installers, support technicians, and administrators. In addition, the program was to "prepare an individual to become a Certified Network Administrator (CNA)." Depending on what year the student enrolled, the cost of course tuition and books ranged from $8,385 to $10,127.

Advertising for the course was developed in 1994 and, at the time most appellants enrolled in the course, consisted primarily of newspaper ads, a brochure, and a radio spot. One brochure stated that students would (1) learn "today's most popular desktop systems"; (2) work with the most powerful computer chips on the market, including Pentiums, 486 PCs, Powermacs, and file servers; and (3) be prepared to take two industry-recognized certification tests, the Novell Cer-

** Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

tified Netware Administrator (CNA) exam and the A+ computer service certificate test.

Appellants brought two separate actions against Brown, alleging fraud, misrepresentation, breach of contract, consumer fraud, and deceptive trade practices. In addition to alleging that the education they received was inadequate and the instructors were not competent, the appellants asserted, among other allegations, that (1) Brown misrepresented the certification and qualification of its instructors; (2) instructors lacked a curriculum; (3) Brown misrepresented that students would be prepared to take the CNA exam and the A+ certification test; (4) students were not taught in modern, up-to-date facilities with state-of-the-art hardware; and (5) Brown did not provide the 960 hours of course instruction it had allegedly promised.

Brown moved for summary judgment, arguing that when a student files suit against a school alleging false statements and broken promises, the matter involves curriculum and, however styled, the case is one for educational malpractice and should be dismissed. The district court granted summary judgment to Brown, ruling as a matter of law that appellants' claims were, in essence, educational malpractice claims that should be dismissed on public-policy grounds. The court also ruled that under the Consumer Fraud Act, education is not a service and the act does not provide for damages. Likewise, the court ruled that education is unsuited to conventional definitions of trade and commerce under the Uniform Deceptive Trade Practices Act and that the act does not provide for damages.

As the prevailing party, Brown was awarded costs and disbursements in amount of $23,631.71. Following a hearing, the district court overruled the court administrator's determination on costs and disbursements and reduced Brown's award to $5,144.95.

Both parties have appealed, and the two cases have been consolidated by this court.

## ISSUES

1. Did the district court err when it granted respondent summary judgment after recharacterizing appellants' claims as a claim for educational malpractice and when it dismissed appellants' action on public-policy grounds?

2. Did the district court err when it ruled that the Consumer Fraud Act does not allow for damages and that trade-school instruction is not a "service," as defined under the act?

3. Did the district court err when it ruled that the Uniform Deceptive Trade Practices Act does not provide for damages and that educational services are not covered by the act?

4. Did the district court abuse its discretion when it reduced respondent's award of costs and disbursements?

## ANALYSIS

On appeal from summary judgment, this court asks whether (1) there are any genuine issues of material fact and (2) the lower court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn. 1990). This court must view the evidence in the light most favorable to the party against whom judgment was granted. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993). Summary judgment is appropriate when there is no genuine issue of material fact and either party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03. When considering questions of law, a reviewing court is not bound by and need not give deference to a district court's determination. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn. 1984).

### I.

Appellants argue that the district court improperly recast their claims for breach of contract, fraud, and misrepresentation as a claim for educational malpractice and insist that they have adequately pleaded and presented evidentiary material to support their claims that Brown made false representations and breached specific promises made to them. Brown argues the district court correctly dismissed the claims because they were, in essence, a claim for educational malpractice, a cause of action that is rejected by the majority of jurisdictions addressing such

claims. The question of whether courts should recognize a claim for educational malpractice is one of first impression in Minnesota. But we find the caselaw of other jurisdictions instructive.

Courts in other jurisdictions have recognized that "[t]he basic relationship between a student and an educational institution is contractual in nature." *CenCor, Inc. v. Tolman*, 868 P.2d 396, 398 (Colo.1994).[1] The catalogs, bulletins, circulars, and institution regulations given to the student form part of the contract. *Zumbrun v. University of S. Cal.*, 25 Cal.App.3d 1, 101 Cal.Rptr. 499, 504 (1972). The majority of courts that have addressed the issue have rejected claims that attack the general quality of education provided to students. *Ross v. Creighton Univ.*, 957 F.2d 410, 414 (7th Cir.1992).[2] Known as educational malpractice, these claims have been rejected by courts on a number of public-policy grounds, including: (1) the lack of a satisfactory standard of care by which to evaluate an educator; (2) the inherent uncertainties about causation and the nature of damages in light of such intervening factors as a student's attitude, motivation, temperament, past experience, and home environment; (3) the potential for a flood of litigation against schools; and (4) the possibility that such claims will "embroil the courts into overseeing the day-to-day operations of schools." *Id.* (citations omitted).

As the court in *Andre v. Pace Univ.* stated:

> [A claim for educational malpractice] necessarily entails an evaluation of the adequacy and quality of the textbook used and the effectiveness of the pedagogical method chosen. * * * [T]he court would be engaged in a comprehensive review of a myriad of educational and pedagogical factors, as well as administrative policies that enter into the consideration of whether the method of instruction and choice of textbook was appropriate, or preferable * * *. Such inquiry would constitute a clear "judicial displacement of complex educational determinations" * * *.

*Andre v. Pace Univ.*, 170 Misc.2d 893, 655 N.Y.S.2d 777, 779–80 (N.Y.App. Term 1996) (citation omitted). Thus, courts have refused to become the "overseers of both the day-to-day operation of [the] educational process as well as the formulation of its governing policies." *Hunter v. Board of Educ.*, 292 Md. 481, 439 A.2d 582, 585 (1982).

But courts have recognized claims by students for breach of contract, fraud, or other intentional wrongdoing that allege a private or public educational institution has failed to provide *specifically promised educational services*, such as the failure to offer classes in a particular subject or to provide a promised number of hours of instruction. *See CenCor*, 868 P.2d at 399 (observing students' claims that educational institution has failed to provide promised educational services have been upheld on contract law principles); *Helbig v. City of New York*, 212 A.D.2d 506, 622 N.Y.S.2d 316, 318 (N.Y.App.Div.1995) (holding although educational malpractice claims are not actionable, properly pleaded causes of action sounding in fraud and other intentional torts may be viable); *Cavaliere v. Duff's Bus. Inst.*, 413 Pa.Super. 357, 605 A.2d 397, 404 (1992) (recognizing no policy consideration supporting bar against causes of action for breach of contract or misrepresentation where private trade school positively represents that certain curriculum will be offered and it is not or that school is accredited to give certain degree when it is not).

In addressing claims that were not found to assert educational malpractice, the *Ross* court observed:

> *Saint Michael's Med. Ctr.*, 201 N.J.Super. 601, 493 A.2d 641, 642 (Law Div.1985) (same); *Helbig v. City of New York*, 212 A.D.2d 506, 622 N.Y.S.2d 316, 318 (N.Y.App.Div.1995) (same); *Paladino v. Adelphi Univ.*, 89 A.D.2d 85, 454 N.Y.S.2d 868, 870 (N.Y.App.Div.1982) (same); *Andre v. Pace Univ.*, 170 Misc.2d 893, 655 N.Y.S.2d 777, 779 (N.Y.App. Term 1996) (same); *Cavaliere v. Duff's Business Inst.*, 413 Pa.Super. 357, 605 A.2d 397, 403 (1992) (same).

---

**1.** *See also Ross v. Creighton Univ.*, 957 F.2d 410, 416 (7th Cir.1992) (same); *Zumbrun v. University of S. Cal.*, 25 Cal.App.3d 1, 101 Cal.Rptr. 499, 504 (1972) (same); *Wickstrom v. North Idaho College*, 111 Idaho 450, 725 P.2d 155, 157 (1986) (same).

**2.** *See, e.g., Blane v. Alabama Commercial College, Inc.*, 585 So.2d 866, 868 (Ala.1991) (refusing to recognize cause of action for educational malpractice); *Hunter v. Board of Educ.*, 292 Md. 481, 439 A.2d 582, 585 (1982) (same); *Swidryk v.*

In these cases, the essence of the plaintiff's complaint would not be that the institution failed to perform adequately a promised educational service, but rather that it failed to perform that service at all. Ruling on this issue would not require an inquiry into the nuances of educational processes and theories, but rather an objective assessment of whether the institution made a good faith effort to perform on its promise.

*Ross,* 957 F.2d at 417.

Accordingly, courts have recognized causes of action for breach of contract or misrepresentation where: (1) a medical resident alleged that a residency program failed to offer month-long rotation in gynecology as stated in its catalog, *Ryan v. University of N.C. Hosps.,* 128 N.C.App. 300, 494 S.E.2d 789, 791, *cert. granted,* 348 N.C. 501, 510 S.E.2d 655, *and appeal dismissed,* 349 N.C. 349, 507 S.E.2d 39 (1998); (2) students alleged and presented evidence that a school failed "to provide modern equipment in good working condition, qualified instructors, and computer training for all students" and failed to provide advanced training at no extra cost as promised, *CenCor,* 868 P.2d at 400; (3) a student's parents alleged that they contracted for "specified services, such as appropriate individualized reading instruction and adequate diagnostic and remediation services," and the school failed to provide such services, *Squires by Squires v. Sierra Nev. Educ. Found. Inc.,* 107 Nev. 902, 823 P.2d 256, 258 (1991); and (4) students alleged that although a school represented that the students would receive an associate's degree in paralegal studies, the school was not certified or accredited to give that degree, *Malone v. Academy of Ct. Reporting,* 64 Ohio App.3d 588, 582 N.E.2d 54, 56, 58–59 (Ohio Ct.App. 1990).

Although no Minnesota case has specifically addressed the issue of educational malpractice, we are guided by an early decision of the Minnesota Supreme Court. In *Vilett v. Moler,* 82 Minn. 12, 14, 84 N.W. 452, 453 (1900), relying on advertisements placed in a Minneapolis newspaper, the plaintiff left work as a bartender in Wisconsin to enroll in the barber school. The advertisements guaranteed that students could earn a specific amount and be placed as barbers after only eight weeks of instruction. *Id.* But the evidence at trial established that becoming a barber required a three-year apprenticeship. *Id.* at 15, 84 N.W. at 453. The supreme court reversed the district court's jury instructions on the issue of damages, while recognizing that the alleged false and fraudulent statements made by the owner and operator of the barber school were properly submitted to the jury. *Id.* at 17, 84 N.W. at 454.

■ We find persuasive the analysis of those courts that have rejected, on public policy grounds, claims for educational malpractice; claims that would require the court to engage in a "comprehensive review of a myriad of educational and pedagogical factors, as well as administrative policies." *Andre,* 655 N.Y.S.2d at 779. Consistent with *Vilett,* however, we are persuaded by, and adopt, the majority rule that a student may bring an action against an educational institution for breach of contract, fraud, or misrepresentation, if it is alleged that the institution failed to perform on specific promises it made to the student and the claim "would not involve an 'inquiry into the nuances of educational processes and theories.'" *Ryan,* 494 S.E.2d at 791 (citation omitted).

■ We conclude that certain of appellants' claims challenge the general quality of the instructors and the education they received from Brown, even though such claims are styled as breach of contract, fraud, and misrepresentation. Those claims were properly dismissed by the district court. Where the essence of the complaint is that the school failed to provide an "effective education," it is irrelevant whether the claim is labeled as a tort action or breach of contract, "since in either situation the court would be forced to enter into an inappropriate review of educational policy and procedures." *Cavaliere,* 605 A.2d at 402.

■ Certain other claims brought by appellants, however, were erroneously dismissed by the district court because those claims allege that Brown failed to deliver on

specific promises and representations.[3] Unlike appellants' claims challenging the quality of education provided by Brown, these claims allege "specific aspect[s] of the contract that would not involve an 'inquiry into the nuances of educational processes and theories.'" *Ryan*, 494 S.E.2d at 791 (citation omitted).[4] Thus, the public policy considerations that discourage recognizing claims for educational malpractice are not implicated, and the district court erred in dismissing these claims.

Finally, we note that while the district court dismissed appellants' action on summary judgment, the actual basis of the dismissal was Minn. R. Civ. P. 12.02(e), failure to state a claim on which relief may be granted. The district court recast all claims as alleging educational malpractice. To the extent that a claim was, in fact, one for educational malpractice as we have defined that term here, the dismissal was proper. Our decision that certain claims survive because they do not allege educational malpractice should not be interpreted as a statement regarding the strength of those claims; nor should our decision preclude consideration by the district court, on remand, of whether material fact issues exist in regard to any of these surviving claims.

**3.** Illustrative of claims erroneously dismissed, we believe, are those alleging that: (1) Brown agreed, but failed, to provide instruction on the installation and upgrade of Unix operating system software; (2) PC/LAN instructors were frequently tardy or absent and wasted class time by complaining about personal problems; (3) Brown represented that students would be introduced to specific types of computers and that students would have "hands-on" training, "lifting the hood" on these types of computers, when, in fact, Brown failed to deliver any instruction in this regard; (4) Brown did not have enough computers in operating condition to teach the course; (5) the computer hardware and software used was not modern or state-of-the-art; and (6) Brown failed to deliver the number of hours of instruction described in the materials given to students.

**4.** Brown's reliance on *Abbariao v. Hamline Univ. Sch. of Law*, 258 N.W.2d 108 (Minn.1977), to argue that appellants' breach-of-contract claim fails as a matter of law, is misplaced. In rejecting a student's argument that the school breach-

## II.

Appellants argue that the district court erroneously ruled that the Minnesota Consumer Fraud Act does not provide for damages and that proprietary trade-school instruction is not a service covered under the act. Brown insists that even if appellants have suffered damages under the act, public policy dictates that their consumer fraud claim must be rejected because it is in fact a claim of educational malpractice. Appellants' claim has merit. To sustain a claim. for consumer fraud, a plaintiff must demonstrate that the defendant made a false promise or misrepresentation with the intent that others rely thereon regardless of whether any person has, in fact, been misled, deceived, or damaged. Minn.Stat. § 325F.69, subd. 1 (1998). The act applies to "any objects, wares, goods, commodities, intangibles, real estate, loans, or services." Minn.Stat. § 325F.68, subd. 2 (1998). A private citizen has standing to bring a cause of action under the Consumer Fraud Act for "damages, together with costs and disbursements, including * * * attorney's fees." Minn.Stat. § 8.31, subd. 3a (1998).

Contrary to the district court's ruling, nothing in the statute or caselaw precludes application of the act to educational services provided by a private, proprietary, for-profit educational institution. By paying tuition,

ed its contract when it failed to offer him a tutorial seminar after he received failing grades, the supreme court in *Abbariao* noted that the student was relying on a promise made three years earlier by the school's predecessor, a promise no longer in effect because the school's bulletin stated that its provisions were subject to change without notice and the student accepted this provision each time he paid his semester tuition. *Id.* at 113–14. The court did not reject the student's breach of contract action outright, but concluded only that the school could not be held to a promise made by another institution.

Brown also insists that the enrollment agreement and school catalog constitute the contract with appellants and that any other oral or written agreements relating to Brown or the PC/LAN program were superseded by the integration clause in the enrollment agreement signed by the parties. The district court did not address the integration clause, however. Accordingly, we do not consider it on appeal. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988) (appellate court will not consider issues not passed on by district court).

students have purchased an educational service. We therefore conclude that classes or course instruction provided by a private, proprietary, for-profit educational institution constitute a "service" or "intangible" under the consumer fraud act.

As the court in *Malone* held:

> Defendants' contention that the Consumer Sales Practices Act is not applicable because the legislature never intended it to apply to regulated professional schools is not well taken. The statute is applicable by its own terms. The school supplied services to consumers in a consumer transaction and plaintiffs have alleged facts of unfair or deceptive acts or practices * * *.

*Malone*, 582 N.E.2d at 59 (citation omitted).

■ Although the trade practices act construed in *Malone* differs from Minnesota's, the policy statements of the two acts are similar and the rationale articulated by the *Malone* court applies equally well to the present case. We hold that, to the extent that appellants' claims are not for educational malpractice, the district court erroneously ruled that the educational instruction provided by Brown is not covered by the Consumer Fraud Act.

■ We further conclude that the Consumer Fraud Act allows for recovery of damages. Although Minn.Stat. § 325F.69, subd. 1, does not specifically provide for money damages, Minn.Stat. § 8.31, subd. 3a, provides that a private citizen has standing to bring suit under the Consumer Fraud Act for "damages." The district court erred in concluding that appellants were not entitled to money damages under the Consumer Fraud Act. Further, because damages are generally a question of fact for the jury, summary judgment on that issue was inappropriate. *See Bryson v. Pillsbury Co.*, 573 N.W.2d 718, 721 (Minn.App.1998) (holding summary judgment inappropriate where genuine issues of material fact exist regarding plaintiff's injuries and damages).

### III.

Appellants contend that the district court erred when it ruled that educational services do not fall within the scope of Minnesota's Uniform Deceptive Trade Practices Act, Minn.Stat. § 325D.43 -.48 (1998), and in ruling that the act does not allow for the recovery of money damages. We conclude that educational services are within the scope of the act, but agree with the district court on the availability of money damages.

■ Under Minnesota's Uniform Deceptive Trade Practices Act, a person may not, among other things, (1) represent that goods or services have characteristics, uses, or benefits that they do not have; (2) represent that goods or services are of a particular standard or quality if they are of another; or (3) advertise goods or services with the intent not to sell them as advertised. Minn. Stat. § 325D.44, subd. 1(5), (7), (9). Under the act, a person likely to be damaged by such conduct, "may be granted an injunction" and "[p]roof of monetary damage, loss of profits, or intent to deceive is not required." Minn.Stat. § 325D.45, subd. 1. The relief provided under the act "is in addition to remedies otherwise available against the same conduct under the common law or other statutes." Minn.Stat. § 325D.45, subd. 3.

■ As noted previously, instruction provided by an educational institution is a service. By its plain language, the statute therefore applies to this case. Like the Consumer Fraud Act, there is nothing in the Uniform Deceptive Trade Practices Act or caselaw construing that act that precludes application of the act to educational institutions. As the court in *Scott v. Association for Childbirth at Home, Int'l*, stated:

> [P]urchasers of educational services may be as much in need of protection against unfair or deceptive practices in their advertising and sale as are purchasers of any other service.

*Scott v. Association for Childbirth at Home, Int'l*, 88 Ill.2d 279, 58 Ill.Dec. 761, 430 N.E.2d 1012, 1015 (1981) (citations omitted).

■ We conclude that the district court erroneously ruled that Minnesota's Uniform Deceptive Trade Practices Act does not apply to educational services. To the extent that appellants' claims do not allege educational malpractice, they are not precluded

as a matter of law from bringing suit against Brown for violations of the act.

No Minnesota appellate court has specifically addressed whether an individual is entitled to damages for a defendant's violation of the Uniform Deceptive Trade Practices Act. In *dictum*, however, this court stated that "injunctive relief, not damages, is the statutory remedy for unlawful or deceptive trade practices." *Johnny's, Inc. v. Njaka,* 450 N.W.2d 166, 168 (Minn.App.1990). Although dictum, this court's statement in *Johnny's* is consistent with the plain language of the act. We therefore conclude that the sole statutory remedy for deceptive trade practices is injunctive relief.

## IV.

Finally, Brown argues that the district erred when it reduced the court administrator's award of costs and disbursements in its favor. Brown is seeking $23,631.71 for costs and disbursements it incurred when taking the depositions of the 40 original plaintiffs. These depositions were taken to support Brown's assertion that appellants had suffered no damages and were therefore not entitled to any relief. Brown insists that it is entitled to costs and disbursements associated with the taking of the original 40 plaintiffs' depositions.

We do not address the issue of costs and disbursements given our decision to reverse in part and remand for trial. The proceeding is not yet completed and no one is yet the prevailing party. *See Wall v. Fairview Hosp. & Healthcare Servs.,* 568 N.W.2d 194, 209 (Minn.App.1997) (refusing to address issue of costs and disbursements after reversing and remanding because "[t]rial is not yet completed and no one is yet the 'prevailing party.'" (citation omitted)), *rev'd in part on other grounds,* 584 N.W.2d 395 (Minn.1998).

## DECISION

Claims by students, whether styled as breach of contract, fraud, or misrepresentation, that attack the general quality of education provided are claims for educational malpractice and are not actionable. A student may bring an action against an educational institution for breach of contract, fraud, or misrepresentation if it is alleged that the educational institution failed to perform on specific promises it made to the student and the claim would not involve an inquiry into the nuances of educational processes and theories.

A private citizen may recover damages under the Minnesota Consumer Fraud Act. This act applies to classes or course instruction provided by a private, proprietary, for-profit educational institution. The Uniform Deceptive Trade Practices Act applies to educational services provided by an educational institution, but the sole statutory remedy available under the act is injunctive relief.

**Affirmed in part, reversed in part, and remanded.**