Linda ZINTER, Appellant,

v.

UNIVERSITY OF MINNESOTA, et al., Respondents.

No. A10–2041.

Court of Appeals of Minnesota.

June 6, 2011.

Steven E. Uhr, Edina, MN, for appellant.

Mark B. Rotenberg, General Counsel, Brian J. Slovut, Associate General Counsel, University of Minnesota, Minneapolis, MN, for respondents.

Considered and decided by KLAPHAKE, Presiding Judge; TOUSSAINT, Judge; and CONNOLLY, Judge.

## OPINION

CONNOLLY, Judge.

Appellant, a former graduate student at respondent university, brought this action in conciliation court, seeking $6,755.23 in tuition refunds. The conciliation court dismissed her claim, and she removed the matter to district court, where she sought to amend her complaint to join the university's president as a defendant and to add claims of breach of contract, promissory estoppel, and violations of due process. The district court found that her breach-of-contract and promissory-estoppel claims were really claims for educational malpractice and dismissed them, on the ground that this cause of action is not recognized in Minnesota law. Appellant was allowed to amend her complaint to join the university's president and to add a due-process claim, for which she sought relief in the form of a refund of all tuition for her graduate program and the removal of an "F" grade from her transcript. Respondents moved to dismiss her amended complaint for failure to state a claim upon which relief could be granted. Respondents' motion was granted, and appellant now challenges the dismissals of both her complaint and her amended complaint. We affirm.

## FACTS

Appellant Linda Zinter was admitted to the Master of Liberal Studies (MLS) program at respondent University of Minnesota (the U) in 1998 to earn a master's degree. The program required 30 credits of coursework and completion of a final

project by enrolling in the final project seminar. By the end of the Spring 2003 semester, appellant had completed all requirements except the final project seminar. Registration for that seminar requires permission from the MLS office, and students are informed that, before beginning the seminar, they must have a "*clear* idea" about their final project.

In September 2003, the director of the MLS program told appellant that, before she could register for the final project seminar, she needed to complete a course in architecture, which was to be a part of her final project, and a course in advanced interdisciplinary study. During the Spring 2004 semester, appellant completed the architecture course. In the Spring 2005 semester, she enrolled in the advanced interdisciplinary study course, but she stopped attending classes during the semester and received a grade of "F."

Appellant did not complete the advanced interdisciplinary course, register for the final project seminar, or complete the final project, and she did not receive a degree. In 2007, she sought tuition refunds for three semesters. Her claims were mediated without resolution by the U's student conflict resolution center, and an associate dean in the graduate school reviewed the claims and found them to be without merit. Appellant then brought this action.

## ISSUES

I. Did the district court err in deciding that the U was entitled to judgment as a matter of law on appellant's contract and promissory-estoppel claims?

II. Did appellant's amended complaint set forth a legally sufficient claim for relief?

## ANALYSIS

### I. The contract and promissory-estoppel claims were properly dismissed.

Summary judgment is to be granted when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that one party is entitled to judgment as a matter of law. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993). This court reviews de novo whether genuine issues of material fact exist and whether the district court erred in applying the law. *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.,* 644 N.W.2d 72, 77 (Minn. 2002).

#### A. The breach-of-contract claim

██ "A claim of breach of contract requires proof of three elements: (1) the formation of a contract, (2) the performance of conditions precedent by the plaintiff, and (3) the breach of the contract by the defendant." *Thomas B. Olson & Assocs., P.A. v. Leffert, Jay & Polglaze, P.A.,* 756 N.W.2d 907, 918 (Minn.App.2008), *review denied* (Minn. Jan. 20, 2009). "[A] student may bring an action against an educational institution for breach of contract ... if it is alleged that the educational institution failed to perform on specific promises it made to the student *and the claim would not involve an inquiry into the nuances of educational processes and theories.*" *Alsides v. Brown Inst., Ltd.,* 592 N.W.2d 468, 473 (Minn.App.1999) (emphasis added) (quotation omitted).

At all levels of education, courts show deference to an institution's academic determinations. *See, e.g., Bd. of Curators v. Horowitz,* 435 U.S. 78, 90, 98 S.Ct. 948, 955, 55 L.Ed.2d 124 (1978) (noting, in medical school context, that judiciary should exercise great restraint in cases involving academic discipline and decline "to further enlarge the judicial presence in the aca-

demic community"); *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1029 (8th Cir.1999) (affirming decision not to accommodate medical student's disability by assigning a passing grade because assigning was "an academic decision" and the court "will not invade a university's province concerning academic matters in the absence of compelling evidence that the academic policy is a pretext for discrimination"); *Zellman v. Indep. Sch. Dist. No. 2758*, 594 N.W.2d 216, 221–22 (Minn.App.1999) (holding that high school student who received a zero on a plagiarized project was not entitled to full evidentiary hearing or hearing before administrative law judge), *review denied* (Minn. July 28, 1999).

■ Appellant's breach-of-contract claim alleged that she had a contract with the U that obliged the U to grant her a master's degree if and when she completed the MLS degree requirements and that the U breached this contract when the program director required her to take two additional courses, telling her that her idea for her final project was not sufficiently developed and that these courses would assist her. The district court concluded that

> determination of [appellant's breach of contract] claims would require the factfinder to delve into the nuances of the MLS program's processes and theories. The factfinder would need to determine whether in fact [appellant] had presented a clear idea of her final project and that she met pedagogical goals of the University, whatever those goals may be. This type of analysis is clearly prohibited under Minnesota law as articulated in *Alsides*.

As the district court noted in its well-reasoned opinion, determining whether ap-

pellant was or was not adequately prepared for the final project seminar would require analysis of the goals of the MLS program. This is not something that courts are equipped to do.

## B. The promissory estoppel claim

■ As an alternative to her breach-of-contract claim, appellant brought a claim for promissory estoppel, which "implies a contract in law where no contract exists in fact." *Deli v. Univ. of Minn.*, 578 N.W.2d 779, 781 (Minn.App.1998), *review denied* (Minn. July 16, 1998). A promissory estoppel claim requires: (1) a clear and definite promise; (2) that the promisor intended to induce the promisee's reliance; (3) that the promisee relied on the promise to his or her detriment; and (4) that enforcement of the promise is necessary to prevent injustice. *Cohen v. Cowles Media Co.*, 479 N.W.2d 387, 391 (Minn.1992).

■ Appellant claims that the U made, and broke, a "promise not to impose additional degree requirements" on her. But the U made no "clear and definite promise," or any promise at all, that any student who accumulated enough credits could enroll in the final project seminar, complete it, and be awarded a degree.[1] In fact, the MLS program established additional, specific requirements for all students before the final project seminar. Thus, the promise on which appellant claims to have relied to her detriment was never made.

■ The district court concluded that appellant's breach-of-contract and promissory-estoppel claims were "barred because they are essentially claims for educational malpractice...." " 'Where the court is asked to evaluate the course of instruction

---

1. As the district court noted, the U did promise that it would grant degrees to those who completed all the requirements of the MLS program, but appellant did not complete those requirements.

or the soundness of the method of teaching that has been adopted by an educational institution, the claim is one of educational malpractice.' " *Glorvigen v. Cirrus Design Corp.*, 796 N.W.2d 541, 553 (Minn.App. 2011) (quoting *Dallas Airmotive, Inc. v. FlightSafety Int'l, Inc.*, 277 S.W.3d 696, 700 (Mo.Ct.App.2008)). When appellant asked the district court to evaluate the method of teaching that required her to take additional courses before enrolling in the final project seminar, she was making, under other names, educational malpractice claims. As the district court noted, educational malpractice is "a claim not recognized in Minnesota law." *See Alsides*, 592 N.W.2d at 473 (adopting analysis of courts that have rejected educational-malpractice claims).

The U was entitled as a matter of law to summary judgment dismissing appellant's claims of breach of contract and promissory estoppel.

## II. The due-process claims were properly dismissed.

When reviewing a case dismissed because it failed to state a claim on which relief could be granted, "the question before this court is whether the complaint sets forth a legally sufficient claim for relief." *Hebert v. City of Fifty Lakes*, 744 N.W.2d 226, 229 (Minn.2008). For the U's alleged due-process violations, appellant in her complaint sought "appropriate equitable relief" including a refund of all the tuition she paid in the MLS program, a reimbursement of other costs associated with the program, and the removal of the "F" grade from her transcript.

### A. Reimbursement of tuition and other costs

Appellant acknowledges that money damages are not available for claims brought against the U alleging violation of

a plaintiff's constitutional rights. *See Treleven v. Univ. of Minn.*, 73 F.3d 816, 818 (8th Cir.1996). She argues that she is not seeking money damages; she is seeking restitution, or "disgorgement," on the basis that the U was unjustly enriched.

▇▇ Unjust enrichment requires that: (1) a benefit be conferred by the plaintiff on the defendant; (2) the defendant accept the benefit; (3) the defendant retain the benefit although retaining it without payment is inequitable. *Acton Constr. Co. v. State*, 383 N.W.2d 416, 417 (Minn.App. 1986), *review denied* (Minn. May 22, 1986). Appellant argues that the MLS program, by retaining her tuition and not granting her a degree, was unjustly enriched and that, because she did not receive the degree after paying the tuition, she did not receive the increased earning potential that was to have been "the benefit of [her] bargain." But the U admitted appellant to courses for each installment of tuition she paid, and it did not enter into a bargain that, if appellant paid a certain amount in tuition, she would receive a degree. Because it provided appellant with the instruction for which she paid, the U did not retain a benefit without recompense.

Even considered as a claim for unjust enrichment, appellant's due-process claim for a tuition refund fails.

### B. Removal of the "F" grade from appellant's transcript

Appellant argues that the F and the course in which she received it should be removed from her transcript "because the class and failing grade were the direct and proximate result of [the U's] improper actions." The district court concluded that

> [t]he [U's] decision to award [appellant] an "F" for failing to attend class is one of academic discretion. The Court will not engage in "a review of a myriad of

educational and pedagogical factors, as well as administrative policies," [*see Alsides*, 592 N.W.2d at 473] in an effort to determine whether [appellant] deserved an "F" for failing to attend class.

Appellant does not dispute that the "F" was an appropriate grade, and she has failed to show any "improper actions" of the U that resulted in her taking the course and receiving that grade.

 Finally, appellant challenges the district court's view that it lacked the authority to remove a grade from her transcript, relying on *Univ. of Texas Med. Sch. v. Than*, 901 S.W.2d 926 (Tex.1995). *Than* does not support appellant's position.[2] *Than* concerned a medical student who, after cheating on a surgery exam, received an "F" in the course and was expelled. The trial court concluded that he had been deprived of due process and issued a permanent injunction that the "F" and the record of expulsion be removed from his transcript and that he be granted a diploma. The Texas Supreme Court ordered a new hearing on the academic dishonesty charge and reversed the injunction, concluding that:

> the injunctive relief represents unwarranted judicial interference with the educational process. The courts should tread lightly in fashioning remedies for due process violations that affect the

academic decisions of state-supported universities. What grade should be awarded and whether [the University of Texas] issues Than a diploma should be determined by university officials after notice and hearing.

*Id.* at 934. Appellant does not seek a new hearing; she seeks permanent removal of the "F" and the course from her transcript. She cites no authority to support her claim that "removal of the class and grade from [her] transcript is certainly within the court's broad equitable powers."

## DECISION

Appellant's breach-of-contract and promissory-estoppel claims against the U were properly dismissed as claims of educational malpractice, the resolution of which would have required excessive inquiry into the educational process; her due-process claims were properly dismissed for failure to state a claim on which relief could be granted.

**Affirmed.**

---

2. In any event, as a case from outside this jurisdiction, *Than* is not dispositive.