Alejandro CRUZ-GUZMAN, as guardian and next friend of his minor children, et al., Respondents,

v.

STATE of Minnesota, et al., Appellants,

Higher Ground Academy, et al., Intervenors.

A16-1265

Court of Appeals of Minnesota.

Filed March 13, 2017

Review Granted April 26, 2017

---

Daniel R. Shulman, Joy Reopelle Anderson, Richard C. Landon, Kathryn E. Hauff, Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, Minnesota (for respondents).

Lori Swanson, Attorney General, Karen D. Olson, Deputy Attorney General, Kathryn M. Woodruff, Kevin A. Finnerty, Andrew Tweeten, Assistant Attorneys General, St. Paul, Minnesota (for appellants).

Considered and decided by Connolly, Presiding Judge; Larkin, Judge; and Reyes, Judge.

## OPINION

LARKIN, Judge

Appellants challenge the district court's refusal to dismiss respondents' class-action

lawsuit, which claims that appellants violated respondents' purported right, under the Education Clause, article XIII, section 1, of the Minnesota Constitution, to an "adequate" education, that is, an education of a certain quality. Because respondents' claims present a nonjusticiable political question, we reverse.

## FACTS

Respondents are the parents of children who are enrolled, or expected to be enrolled, in the Minneapolis public schools, Special School District No. 1, and the St. Paul public schools, Independent School District 625. Respondent One Family One Community is a Minnesota nonprofit corporation located in Minneapolis. One of its purposes is to "ensure and provide for adequate educational opportunities for economically-disadvantaged children and children of color."

In November 2015, respondents sued appellants State of Minnesota, Minnesota Department of Education, Minnesota Department of Education Commissioner Brenda Cassellius, and the Minnesota Senate and Minnesota House of Representatives. Respondents also named Governor Mark Dayton, Senate President Sandra L. Pappas, and House Speaker Kurt Daudt as defendants. Respondents claimed violations of the Education, Equal Protection, and Due Process Clauses of the Minnesota Constitution, asserting that the children had been denied the fundamental right to receive an education. Respondents also claimed a violation of the Minnesota Human Rights Act, asserting that the children have been unlawfully discriminated against "in education on the basis of race and status with regard to public assistance."

Respondents alleged that "[s]chool children in public schools throughout the State of Minnesota, including the City of Minneapolis, the City of Saint Paul, and their adjacent suburban communities, are largely segregated by race and socioeconomic status," that appellants are allowing and maintaining such segregated schools, and that the Minneapolis and St. Paul public school districts have established numerous "hyper-segregated schools" with the knowledge and consent of appellants.

Respondents further alleged that their children received an inadequate education as the "result of the educational and social policies pursued or accepted by [appellants], including the racial and socioeconomic segregation of the Minneapolis and Saint Paul public schools." Respondents alleged that a "segregated education is *per se* an inadequate education under the Education Clause of the Minnesota State Constitution" and that "[i]n addition to receiving a racially and socioeconomically segregated education, [respondents] are in fact receiving an inadequate education by any objective measure or standard."

Respondents' complaint sets forth data showing a racial achievement gap among students in Minnesota, as well as achievement gaps between students in Minneapolis and St. Paul public schools and students in public schools in other parts of the state. The data include standardized test scores and graduation rates. The complaint alleges that these gaps are caused by racial and socioeconomic segregation.

Respondents' prayer for relief requests a judgment against appellants "[f]inding, adjudging, and decreeing that [appellants] have engaged in the violations of law set forth hereinabove" and "[p]ermanently enjoining [appellants] from continuing to engage in the violations of law set forth hereinabove, ordering [appellants] to remedy the violation of law set forth hereinabove, and ordering [appellants] to provide the [children] forthwith with an adequate and desegregated education."

Appellants moved to dismiss respondents' complaint under Minn. R. Civ. P. 12.02 on the grounds that "(1) the Court lacks jurisdiction over the subject matter; (2) the Complaint fails to state a claim ... upon which relief can be granted; and (3) [respondents] failed to join a party pursuant to Minn. R. Civ. P. 19." In the alternative, appellants asked the district court to order respondents to provide a more definite statement under Minn. R. Civ. P. 12.05.

The district court dismissed the complaint as to Governor Dayton, Senate President Pappas, and Speaker Daudt, concluding that they are entitled to legislative immunity under the Speech or Debate Clause of the Minnesota Constitution. The district court also dismissed respondents' claim under the Minnesota Human Rights Act, concluding that respondents lacked standing. The district court otherwise denied defendants' motion to dismiss and for a more definite statement, noting, however, that "[c]oncerns regarding justiciability may be warranted."

Appellants appealed, raising four issues: (1) whether the district court erred by refusing to dismiss, on legislative-immunity grounds, the claims against the Minnesota Senate and Minnesota House of Representatives, (2) whether the district court erred by refusing to dismiss the complaint as one that presents a nonjusticiable political question, (3) whether the district court erred by refusing to dismiss the complaint based on respondents' failure to join all interested persons, and (4) whether the district court erred by refusing to dismiss the claims against the State of Minnesota because it is not a proper party defendant. Appellants also petitioned for discretionary review of the district court's refusal to dismiss respondents' claims on the merits.

Respondents moved this court to dismiss appellants' appeal of the district court's rulings regarding justiciability, failure to join necessary parties, and the State's party status. This court granted respondents' motion to dismiss the claims against the State of Minnesota but otherwise denied respondents' motion, specifically stating that the "order denying appellants' motion to dismiss on the ground of lack of justiciability is appealable."

## ISSUE

Did the district court err by refusing to dismiss respondents' claims for lack of any justiciable controversy?

## ANALYSIS

■ Appellants contend that the district court erred by not dismissing respondents' complaint for lack of justiciability and failure to join necessary parties. Appellants also contend that the district court erred by not dismissing the claims against the Minnesota Senate and Minnesota House of Representatives on legislative-immunity grounds. Because our determination regarding justiciability is dispositive, we limit our review to that issue.

■ The existence of a justiciable controversy is essential to a court's exercise of jurisdiction and power to adjudicate. *McCaughtry v. City of Red Wing*, 808 N.W.2d 331, 337 (Minn.2011); *Izaak Walton League of Am. Endowment, Inc. v. State, Dep't of Nat. Res.*, 312 Minn. 587, 589, 252 N.W.2d 852, 854 (1977). Appellants argue that "all of Respondents' claims are based on an alleged right to an 'adequate education,' which presents a nonjusticiable political question."[1] Appel-

1. Although respondents supported their constitutional claims with allegations of segregation, respondents did not make a traditional segregation claim based on racial discrimination. Instead, respondents' claims are rooted in a purported right to an education of a

lants note that "[n]umerous state supreme courts have dismissed similar complaints on justiciability grounds."[2] "Justiciability is an issue of law that we review de novo." *McCaughtry*, 808 N.W.2d at 337.

Respondents counter that appellants' argument regarding justiciability relies on "the same citations used below to support their argument that the Education Clause does not require education in the state to be 'adequate'—which is an issue that is not properly before the Court."

We acknowledge that this court denied appellants' request for discretionary review of the district court's refusal to dismiss respondents' claims on the merits. However, an examination of the constitutional underpinnings of respondents' as-

serted right to an adequate education informs our de novo analysis regarding the justiciability issue, which is properly before this court.

The Education Clause, article XIII, section 1, of the Minnesota Constitution provides:

**Uniform system of public schools.** The stability of a republican form of government depending mainly upon the intelligence of the people, it is the duty of the legislature to establish a general and uniform system of public schools. The legislature shall make such provisions by taxation or otherwise as will secure a thorough and efficient system of public schools throughout the state.

certain quality under the Education Clause, Article XIII, section 1, of the Minnesota Constitution. A segregation claim based on racial discrimination is justiciable. *See Brown v. Bd. of Educ.*, 347 U.S. 483, 495, 74 S.Ct. 686, 692, 98 L.Ed. 873 (1954) (holding that segregation in public education is a denial of equal protection of the laws).

**2.** Appellants cite the following cases: *Neb. Coal. for Educ. Equity & Adequacy v. Heineman*, 273 Neb. 531, 731 N.W.2d 164, 176, 183 (2007) (dismissing education-clause claim and recognizing "that the judicial department has no business entertaining the claim of unlawfulness—because the question is entrusted to one of the political branches" (quotation omitted)); *Okla. Educ. Ass'n v. State of Okla. ex rel. Okla. Legislature*, 158 P.3d 1058, 1065-66 (Okla.2007) (dismissing education-clause challenge as nonjusticiable where plaintiffs attempted "to circumvent the legislative process by having this Court interfere with and control the Legislature's domain of making fiscal-policy decisions and of setting educational policy by imposing mandates on the Legislature and by continuing to monitor and oversee the Legislature"); *Lewis E. v. Spagnolo*, 186 Ill.2d 198, 238 Ill.Dec. 1, 710 N.E.2d 798, 804-05 (1999) (affirming dismissal of education-clause claim when recognition of such a claim "would require the judiciary to ascertain from the constitution alone the content of an 'adequate' education"); *Marrero ex*

*rel. Tabalas v. Commonwealth*, 559 Pa. 14, 739 A.2d 110, 113-14 (1999) (stating that once the legislature has established the required system of education the court should not enter the realm of education policy under the guise of determining what is "adequate"); *Comm. for Educ. Rights v. Edgar*, 174 Ill.2d 1, 220 Ill.Dec. 166, 672 N.E.2d 1178, 1191, 1193 (1996) (affirming dismissal of claims brought under Illinois's education clause because "the question of educational quality is inherently one of policy involving philosophical and practical considerations that call for the exercise of legislative and administrative discretion" such that "whether the educational institutions and services in Illinois are 'high quality' is outside the sphere of the judicial function"); *see also King v. State*, 818 N.W.2d 1, 21 n.17 (Iowa 2012) (stating a court sometimes does its job by "recognizing that the clause in question delegates authority to another branch of government"); *Bonner ex rel. Bonner v. Daniels*, 907 N.E.2d 516, 518 (Ind. 2009) ("Although recognizing the Indiana Constitution directs the General Assembly to establish a general and uniform system of public schools, we hold that it does not mandate any judicially enforceable standard of quality, and to the extent that an individual student has a right, entitlement, or privilege to pursue public education, this derives from the enactments of the General Assembly, not from the Indiana Constitution.").

Whether there is a right to an "adequate" education under the Education Clause, that is, an education of a certain quality, is a question of first impression. Minnesota caselaw applying the Education Clause generally involves educational financing or resources. *See, e.g., Bd. of Educ. v. Erickson*, 209 Minn. 39, 40, 295 N.W. 302, 303 (1940) (city charter levy limits); *State ex rel. Klimek v. Sch. Dist. No. 70*, 204 Minn. 279, 281-82, 283 N.W. 397, 398-99 (1939) (transportation of students); *Associated Schs. of Indep. Dist. No. 63 v. Sch. Dist. No. 83*, 122 Minn. 254, 254-55, 142 N.W. 325, 325 (1913) (nonresident student tuition); *Curryer v. Merrill*, 25 Minn. 1, 5-6 (1878) (textbooks); *Bd. of Educ. v. Moore*, 17 Minn. 412, 415-16, 17 Gil. 391, 393-94 (1871) (bonds issued by board of education). We are not aware of any precedential case expressly holding that Minnesota's Education Clause imposes a qualitative educational requirement.

Appellants argue that the Minnesota Constitution does not provide textual support for respondents' assertion of a constitutional right to an "adequate" education. As appellants note, "[T]he word 'adequate' does not appear in Minnesota's Education Clause." Instead, the Education Clause sets forth the legislature's duty to establish a "general and uniform system of public schools" and to secure, "by taxation or otherwise," a "thorough and efficient system of public schools." Minn. Const. art. XIII, § 1. The clause does not state that the legislature must provide an education that meets a certain qualitative standard. Moreover, assuming without deciding that the Education Clause requires the provision of an education of a certain quality, the clause does not set forth the relevant qualitative standard.

Respondents' request for relief therefore requires the judiciary to both read an adequacy requirement based on a qua-

litative standard into the language of the Education Clause and to define the qualitative standard. Respondents have a different view, arguing that the judiciary merely needs to determine whether appellants have violated the purported constitutional duty to provide an adequate education. We disagree: to determine whether appellants have violated the purported obligation to provide an adequate education, we must also define "adequate" and the attendant qualitative standard.

Given respondents' attempt to gauge adequacy based on student-performance measures such as standardized test scores and graduation rates, defining the necessary qualitative standard inevitably requires the judiciary to establish educational policy, which brings us to appellants' argument that respondents' claims present a nonjusticiable political question.

"What is generally meant, when it is said that a question is political, and not judicial, is that it is a matter which is to be exercised by the people in their primary political capacity, or that it has been specifically delegated to some other department or particular officer of the government, with discretionary power to act." *In re McConaughy*, 106 Minn. 392, 415, 119 N.W. 408, 417 (1909). The United States Supreme Court examined the "contours of the 'political question' doctrine" in *Baker v. Carr*, stating that a claim is nonjusticiable if its subject matter is inappropriate for judicial consideration and that "[t]he nonjusticiability of a political question is primarily a function of the separation of powers." 369 U.S. 186, 198, 210, 82 S.Ct. 691, 700, 706, 7 L.Ed.2d 663 (1962).

The Supreme Court explained:

It is apparent that several formulations ... may describe a political question, although each has one or more elements which identify it as essentially a function of the separation of powers.

Prominent on the surface of any case held to involve a political question is found [(1)] a textually demonstrable constitutional commitment of the issue to a coordinate political department; [(2)] a lack of judicially discoverable and manageable standards for resolving it; [(3)] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; [(4)] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; [(5)] an unusual need for unquestioning adherence to a political decision already made; or [(6)] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Id.* at 217, 82 S.Ct. at 710.

■ "Unless one of these formulations is inextricable from the case at bar, there should be no dismissal for non-justiciability on the ground of a political question's presence." *Id.* However, it must be clear that the challenged claim "is not so enmeshed" with the political-question elements that render claims nonjusticiable as to actually present a political question itself. *Id.* at 227, 82 S.Ct. at 715. "[I]t is the involvement in [challenged] claims of the elements thought to define 'political questions,' and no other feature, which could render them nonjusticiable." *Id.* at 229, 82 S.Ct. at 716.

Respondents' claims involve three of the six elements characterizing political questions. First, assuming that the Education Clause mandates the provision of an education of a certain quality, there is "a textually demonstrable constitutional commitment of the issue to a coordinate political department." *See id.* at 217, 82 S.Ct. at 710. The Education Clause states that "it is the duty of the legislature to establish a general and uniform system of public schools." Minn. Const. art. XIII, § 1. If that duty includes providing an education of a certain quality, establishing the appropriate qualitative standard is also committed to the legislature under the plain language of the constitution.

Second, deciding whether appellants failed to provide an adequate education would require us to first determine the applicable standard, which is "an initial policy determination of a kind clearly for nonjudicial discretion." *See Baker*, 369 U.S. at 217, 82 S.Ct. at 710. Such a determination rests in educational policy and is entrusted to the legislature, and not the judicial branch. In *Curryer v. Merrill*, an early Education Clause case involving a challenge to a statute governing the provision of textbooks, the supreme court unequivocally stated that "the course of instruction to be pursued in [the public school system] is entirely under legislative control." 25 Minn. at 7. The supreme court explained that "[t]o the judiciary belongs the more restricted duty of passing upon the validity of legislative enactments, as being within or without the boundaries assigned to the lawmaking power by constitutional law." *Id.* at 3. The supreme court further explained:

That the proper education of all its citizens vitally concerns the permanent prosperity and public welfare of the state is not controverted. Whatever provision, therefore, may be necessary to the attainment of this end, it is clearly within the jurisdiction of the legislature, as the representative of the sovereign law-making power of the state, to make, subject only to such restrictions as are imposed upon the exercise of the power by the fundamental law.

The whole question, also, of the necessity or expediency of any particular measure, with reference to this matter,

is one of legislative and not judicial cognizance. In the absence of any constitutional prohibition, the whole matter of the establishment of public schools, the course of instruction to be pursued therein, how they shall be supported, upon what terms and conditions people shall be permitted to participate in the benefits they afford—in fine, all matters pertaining to their government and administration—come clearly within the range of proper legislative authority.

*Id.* at 5.

This court has therefore refused to engage in educational-policy determinations. For example, in *Alsides v. Brown Inst., Ltd.*, this court joined the majority of courts that have refused to recognize a claim of educational malpractice on public policy grounds, reasoning that such claims "require [a] court to engage in a comprehensive review of ... myriad ... educational and pedagogical factors, as well as administrative policies." 592 N.W.2d 468, 472-73 (Minn.App.1999) (quotation omitted). In doing so, we deemed judicial review of educational policy inappropriate. *Id.*

Third, respondents have not identified, and we do not ascertain, any "judicially discoverable and manageable standards" for resolving respondents' inadequate-education claims. *See id.* "[J]udicial action must be governed by *standard*, by *rule*. Laws promulgated by the Legislative Branch can be inconsistent, illogical, and ad hoc; law pronounced by the courts must be principled, rational, and based upon reasoned distinctions." *Vieth v. Jubelirer*, 541 U.S. 267, 278, 124 S.Ct. 1769, 1777, 158 L.Ed.2d 546 (2004). If respondents' claims merely required us to determine whether appellants have violated a defined constitutional mandate, we would have no difficulty concluding that this case presents a justiciable controversy. *See Baker*, 369 U.S. at 217, 82 S.Ct. at 710 ("The courts

cannot reject as 'no law suit' a bona fide controversy as to whether some action denominated 'political' exceeds constitutional authority."). But respondents' inadequate-education claims inevitably require us to define the relevant qualitative standard.

In sum, respondents' claims are so enmeshed with political elements that they present a nonjusticiable political question.

Respondents argue that the Minnesota Supreme Court "has already treated educational adequacy as justiciable" in *Skeen v. State*, 505 N.W.2d 299 (Minn.1993). In *Skeen*, 52 school districts and 10 parents sued the State of Minnesota, State Board of Education, and Minnesota Commissioner of Education, "claiming that certain [statutory] components of the Minnesota education finance system were unconstitutional under the Education Clause of the Minnesota Constitution." 505 N.W.2d at 301. The plaintiffs also claimed that the challenged statutes violated the Equal Protection Clause of the Minnesota Constitution. *Id.* at 312. The supreme court concluded that "[t]he current system of state funding of education does not violate the Education Clause of the Minnesota Constitution" and that

> [u]nder the equal protection clause of the Minnesota Constitution, the state constitutional provision requiring the legislature to establish a "general and uniform system of public schools" indicates that education is a fundamental right in Minnesota. However, the current system of state educational finance satisfies that fundamental right, particularly where all plaintiff districts are provided with an adequate level of education which meets or exceeds the state's basic educational requirements and where these districts are given sufficient funding to meet their basic needs.

*Id.* at 301.

Although the supreme court repeatedly referred to an "adequate" education in

*Skeen*, the references must be read in context. *Skeen* involved a challenge to the state's education-finance system. *Id.* The supreme court was not asked to determine, and did not determine, whether the Education Clause guarantees an education of a certain quality. The supreme court specifically observed that the case "never involved a challenge to the *adequacy* of education in Minnesota" and that the "parties conceded that all plaintiff districts met or exceeded the educational requirements of the state." *Id.* at 302-03. The supreme court's statements regarding an "adequate" education therefore primarily focused on funding and the allocation of educational resources. For example, the supreme court distinguished education-finance systems that were held unconstitutional in other states, reasoning that in those states, "there were inadequacies in the levels of *basic* funding, and, consequently, a deficient overall level of education." *Id.* at 311.

The closest the *Skeen* court came to defining adequacy in terms of educational quality is its statement that because Minnesota's education-finance system provided "uniform funding to each student in the state in an amount sufficient to generate an adequate level of education which meets all state standards," the state had satisfied its duty under the Education Clause. *Id.* at 315. But the supreme court did not identify the relevant state standards and did not suggest that those standards emanated from the Education Clause. Most importantly, the supreme court did not consider or discuss whether it would be appropriate for the judiciary to establish qualitative educational standards. In sum, *Skeen* does not answer the justiciability question in this case.

Because resolution of respondents' claims requires establishment of a qualitative educational standard, which is a task for the legislature and not the judiciary, the claims present a nonjusticiable political question. While we share the desire of respondents, and indeed of all Minnesotans, for an excellent system of public education, the establishment of qualitative standards necessary to achieve that laudable goal is entrusted to the elected representatives in our legislature and local branches of government.

## DECISION

Because respondents' remaining claims present a nonjusticiable political question, we reverse the district court's order refusing to dismiss for lack of justiciability, without addressing appellants' other assignments of error.

**Reversed.**